IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALYSE SANCHEZ, *et al.*, ) | |
| ) | |
| Plaintiffs-Petitioners, ) | |
| ) | Civil No. 8:19-cv-01728-GJH |
| v. ) | |
| ) | |
| KEVIN MCALEENAN, *et al.*, ) | |
| ) | |
| Defendants-Respondents. ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE AMENDED
COMPLAINT, AND IN REPLY IN FURTHER SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Nicholas T. Steiner, Esq. (Bar No. 19670)
David Rocah, Esq. (Bar No. 27315)
**AMERICAN CIVIL LIBERTIES UNION OF
MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8550
steiner@aclu-md.org
rocah@aclu-md.org

Seth A. Rosenthal, Esq. (Bar No. 17080)
Nathaniel S. Berry, Esq. (Bar No. 29278)
Katherine K. Sochacki, Esq. (*pro hac vice*)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
sarosenthal@venable.com
nsberry@venable.com
kksochacki@venable.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................ 1

STANDARD OF REVIEW ......................................................................................... 2

ARGUMENT ............................................................................................................... 3

    I.     This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims ............... 3

        A.     Sections 1252(a)(5) and (b)(9) Do Not Bar the Plaintiffs' Claims ............................................................................... 3

        B.     Section 1252(g) Does Not Bar the Plaintiff Claims............................. 5

        C.     Section 1252 Cannot Strip this Court of Jurisdiction to Hear this Habeas ............................................................................. 7

            1.     Plaintiffs Do Not Have an Adequate Habeas Substitute ......................................................................... 8

            2.     The Suspension Clause Applies to Removal-Related Claims ........................................................................ 10

    II.    Plaintiffs State Viable Claims Based on the Government's Interference with Their Attempts to Obtain Provisional Waivers, and Plaintiffs Are likely to Succeed on the Merits of those Claims............................................. 12

        A.     Plaintiffs State a Viable Claim Under the APA.................................. 12

        B.     Plaintiffs State a Viable Claim for Violation of Their Due Process Rights...................................................................... 13

        C.     Plaintiffs State a Viable Claim Under the INA.................................... 16

    III.    This Court May Enter Preliminary Relief on Behalf of the Proposed Class Prior to Class Certification.................................................................. 19

CONCLUSION............................................................................................................ 20

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) ................................................................................ 2

*Abdi v. Duke*,
280 F. Supp. 3d 373 (W.D.N.Y. 2017) ................................................ 17

*Abdulai v. Ashcroft*,
239 F.3d 542 (3d Cir. 2001) ................................................................ 14

*Accardi v. Shaughnessy*,
347 U.S. 260 (1954) .............................................................................. 14

*Aguilar v. I.C.E.*,
510 F.3d 1 (1st Cir. 2007) ...................................................................... 4

*Aguilera v. Kirkpatrick*,
241 F.3d 1286 (10th Cir. 2001) .......................................................... 11

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ................................................................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 2

*Bd. of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) .............................................................................. 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 2

*Boumediene v. Bush*,
553 U.S. 723 (2008) ............................................................................ 7, 8

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) .............................................................................. 18

*Bowrin v. U.S. I.N.S.*,
194 F.3d 483 (4th Cir. 1999) ................................................................ 6

*Calderon v. Sessions*,
330 F. Supp. 3d 944, 954–56 (S.D.N.Y. 2018) ............................. passim

*Chacon-Corral v. Weber*,
   259 F. Supp. 2d 1151 (D. Colo. 2003) .......................................................... 15

*Berkley v. Mountain Valley Pipeline*,
   896 F.3d 624 (4th Cir. 2018) ........................................................................ 2

*Damus v. Nielsen*,
   313 F. Supp. 3d 317 (D.D.C. 2018) .............................................................. 17

*De Jesus Martinez v. Nielsen*,
   341 F. Supp. 3d 400 (D.N.J. 2018) ..................................................... passim

*Dep't of Commerce v. New York*,
   139 S. Ct. 2551 (2019) ................................................................................ 12

*Devitri v. Cronen*,
   290 F. Supp. 3d 86 (D. Mass. 2017) ............................................................ 10

*Dragenice v. Ridge*,
   389 F.3d 92 (4th Cir. 2004) ......................................................................... 10

*Futeryan-Cohen v. I.N.S.*,
   140 F. Supp. 2d 646 (E.D. Va. 2001) .......................................................... 10

*Fish v. Kobach*,
   189 F. Supp. 3d 1107 (D. Kan.) ................................................................... 20

*Garcia v. Neagle*,
   660 F.2d 983 (4th Cir. 1981) ....................................................................... 12

*Gooch v. Life Inv'rs Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) ....................................................................... 19

*Grimm v. Gloucester Cty. Sch. Bd.*,
   822 F.3d 709 (4th Cir. 2016) ....................................................................... 18

*Hamama v. Adducci*,
   912 F.3d 869 (6th Cir. 2018) ................................................................. 6, 11

*Hamilton v. Gonzales*,
   485 F.3d 564 (10th Cir. 2007) ....................................................................... 9

*Heikkila v. Barber*,
   345 U.S. 229 (1953) ..................................................................................... 10

*INS v. St. Cyr*,
  533 U.S. 289 (2001) ............................................................................................passim

*Jarpa v. Mumford*,
  211 F. Supp. 3d 706 (D. Md. 2016) .................................................................. 8

*Jimenez v. Nielsen*,
  334 F. Supp. 3d 370 (D. Mass. 2018) ........................................................passim

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
  2019 WL 3536786 (D. Md. Aug. 2, 2019) ...................................................... 19

*Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*,
  880 F. Supp. 2d 689 (D. Md. 2012) ................................................................... 2

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ............................................................................... 18, 19

*Lee v. Orr*,
  2013 WL 6490577 (N.D. Ill. Dec. 10, 2013) ................................................ 20

*Leslie v. Attorney Gen. of U.S.*,
  611 F.3d 171 (3d Cir. 2010) ............................................................................ 14

*Lin v. Nielsen*,
  377 F. Supp. 3d 556 (D. Md. 2019) ..........................................................passim

*Malm v. Ashcroft*,
  2004 WL 964278 (D. Md. May 4, 2004) ........................................................ 10

*McGee v. Cole*,
  115 F. Supp. 3d 765 (S.D.W. Va. 2015) .......................................................... 6

*McGlothlin v. Connors*,
  142 F.R.D. 626 (W.D. Va. 1992) .................................................................... 20

*Medina v. United States*,
  259 F.3d 220 (4th Cir. 2001) ............................................................................ 6

*Morton v. Ruiz*,
  415 U.S. 199 (1974) ........................................................................................ 14

*Munaf v. Geren*,
  553 U.S. 674 (2008) ........................................................................................ 11

*Musunuru v. Lynch*,
831 F.3d 880 (7th Cir. 2016) ............................................................... 17

*Nakaranurack v. U.S.*,
68 F.3d 290 (9th Cir. 1995) .................................................................. 11

*Newbrough v. Piedmont Reg'l Jail Auth.*,
2012 WL 169988 (E.D. Va. Jan. 19, 2012) ............................................ 6

*Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*,
556 F.3d 177 (4th Cir. 2009) ............................................................... 18

*Partington v. Am. Int'l Specialty Lines Ins. Co.*,
443 F. 3d 334 (4th Cir. 2006) .............................................................. 20

*Pasquini v. Morris*,
700 F.2d 658 (11th Cir. 1983) ............................................................. 17

*Perez-Gonzalez v. Ashcroft*,
379 F.3d 783 (9th Cir. 2004) ............................................................... 15

*Raley v. Ohio*,
360 U.S. 423, 426 (1959) ..................................................................... 15

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) .............................................................................. 4

*Robertson v. Sea Pines Real Estate Companies, Inc.*,
679 F.3d 278 (4th Cir. 2012) ................................................................. 2

*Romero v. Barr*,
--- F.3d ----, 2019 WL 4065596 (4th Cir. Aug. 29, 2019) ................. 18, 19

*Rosales v. Bureau of Immigration & Customs Enforcement*,
426 F.3d 733 (5th Cir. 2005) ............................................................... 11

*Saint Fort v. Ashcroft*,
329 F.3d 191 (1st Cir. 2003) ................................................................ 13

*Saintha v. Mukasey*,
516 F.3d 243 (4th Cir. 2008) ................................................................. 9

*Sanchez-Naranjo v. Holder*,
510 F. App'x 759 (10th Cir. 2013) ........................................................ 9

*Sandoval v. Reno,*
166 F.3d 225 (3d Cir. 1999)......................................................................10

*Scialabba v. Cuellar de Osorio,*
573 U.S. 41 (2014)...................................................................................17

*Selgeka v. Carroll,*
184 F.3d 337 (4th Cir. 1999) ......................................................................6

*Siena Corp. v. Mayor & City Council of Rockville Maryland,*
873 F.3d 456 (4th Cir. 2017) ....................................................................15

*Simmonds v. I.N.S.,*
326 F.3d 351 (2d Cir. 2003)......................................................................11

*Tall v. Maryland Dep't of Health & Mental Hygiene,*
2018 WL 2075281 (D. Md. May 2, 2018)....................................................2

*United States v. Heffner,*
420 F.2d 809 (4th Cir. 1969) ....................................................................14

*United States v. Morgan,*
193 F.3d 252 (4th Cir. 1999) ....................................................................14

*Yanez-Marquez v. Lynch,*
789 F.3d 434 (4th Cir. 2015).....................................................................14

*You, Xiu Qing v. Nielsen,*
321 F. Supp. 3d 451 (S.D.N.Y. 2018)...................................................passim

## Rules, Statutes, and Regulations

8 C.F.R § 212.2 ..........................................................................................18

8 C.F.R. § 212.7 .....................................................................................8, 18

8 C.F.R. § 1003.1 .........................................................................................8

8 C.F.R. § 1240.1 .........................................................................................8

8 U.S.C. § 1182 ............................................................................................8

8 U.S.C. § 1252 .....................................................................................passim

8 U.S.C. § 1255 ............................................................................................8

28 U.S.C. § 2241 ........................................................................ 10

Fed. R. Civ. P. 12 ...................................................................... 2

U.S. Const. art. I, § 9, cl. 2 ........................................................ 7

## **Other**

Newberg on Class Actions § 4:30 (5th ed. 2013) .................................... 20

USCIS Field Manual § 15.1 ...................................................... 16, 17

**INTRODUCTION**

This lawsuit challenges the Defendants' unlawful arrest, detention, and removal of individuals who are seeking to avail themselves of the "provisional waiver" regulations which allow immigrants to remain in the United States while they seek permanent residency based on their marriages to U.S. citizens. This lawsuit also challenges the Defendants' even more egregious conduct of using the provisional waivers regulations, and specifically the marriage interview that is part of that process, to lure and trap immigrants to be arrested, detained, and removed. Plaintiffs allege, on behalf of themselves and a putative class, that the Defendants' conduct violates the APA, INA, and due process. Plaintiffs have also filed a motion for preliminary injunction to protect themselves and the putative class during the pendency of the lawsuit.

The Defendants' arguments in opposition to the motion for preliminary injunction and to dismiss the action are largely the same arguments which they concede this Court has already rejected in *Lin v. Nielsen*, 377 F. Supp. 3d 556 (D. Md. 2019) (Hazel, J.). In *Lin*, the Court considered claims that are substantively identical to the claims Plaintiffs bring in this action. The Court found that the district court has subject matter jurisdiction to hear the claims and that the plaintiffs in that case were likely to succeed on the merits of their APA claim (without reaching a decision on the plaintiffs' other claims). The Defendants offer no reason to disturb the Court's well-reasoned decision in *Lin*. The Defendants' arguments that Plaintiffs' claims are not valid are largely just rehashed arguments that the Court expressly or implicitly rejected in *Lin*. Their remaining arguments fare no better. Plaintiffs' claims are likely to succeed on the merits and each claim demonstrates a plausible entitlement to relief sufficient to defeat the Defendants' motion to dismiss. The Court should grant Plaintiffs' motion for preliminary injunction and deny the Defendants' motion to dismiss.

## STANDARD OF REVIEW

Defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  A court may only grant a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Tall v. Maryland Dep't of Health & Mental Hygiene*, 2018 WL 2075281, at *3 (D. Md. May 2, 2018) (Hazel, J.), *aff'd*, 740 F. App'x 313 (4th Cir. 2018).  Where, as here, the Defendants argue that a statute limits the court's judicial review, "courts must 'begin with the strong presumption that Congress intends judicial review of administrative action.'" *Lin*, 377 F. Supp. 3d at 561–62 (quoting *Berkley v. Mountain Valley Pipeline*, 896 F.3d 624, 631 (4th Cir. 2018).  "This presumption can be overcome only upon a showing of clear and convincing evidence of a contrary legislative intent." *Id.* at 562 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)) (internal quotations omitted).

"To survive a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tall*, 2018 WL 2075281, at *4 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Plausibility requires that the factual allegations 'be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true.'" *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  On a motion to dismiss, the question is whether, construed in the light most favorable to the plaintiff, it is plausible that the plaintiff could prevail on its claim with the benefit of discovery.  *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, 880 F. Supp. 2d 689, 692 (D. Md. 2012).

**ARGUMENT**

**I.     This Court Has Subject Matter Jurisdiction Over Plaintiffs' Claims**

Defendants rely on inapposite authority to argue that §§ 1252(a)(5), (b)(9), and (g) of the

REAL ID Act bar this Court's review. *See* Defs.' Resp. 9–15. As the Defendants concede, their

arguments that this court does not have subject jurisdiction are the same arguments rejected by this

Court in *Lin v. Nielsen* ("*Lin*").[1] The Defendants offer no basis for rejecting this Court's prior

decision finding subject matter jurisdiction.

**A.     Sections 1252(a)(5) and (b)(9) Do Not Bar the Plaintiffs' Claims**

Sections 1252(a)(5) and (b)(9) do not bar Plaintiffs' claims:

> Petitioners do not "seek judicial review of [Lin's] order of removal." Indeed, the
> provisional waiver process they seek to complete requires Lin to leave the country
> to execute his final order of removal. Nor do Petitioners' claims arise from an
> action taken to remove an alien from the United States; these claims could not be
> raised pursuant to § 1252(b)(9) in immigration court or the BIA, as the relief sought
> can only be secured after such a court has issued an order of removal. Rather than
> challenging the validity of the order of removal or of any action leading to the
> removal, Petitioners' APA and INA claims arise from an allegation that DHS has
> adopted a new policy that nullifies its own rules. Petitioners' Due Process Clause
> claims arise from an allegation that Petitioners have a legitimate entitlement to
> complete the application process, and DHS has arbitrarily denied them the
> opportunity to complete that process.

*Lin*, 377 F. Supp. 3d at 562 (citations omitted).[2]

---

[1] In *Lin*, this Court found that the court had subject matter jurisdiction in its decision granting the
Plaintiffs a preliminary injunction. *See Lin*, 377 F. Supp. 3d at 561–63. The Government withdrew
its pending appeal of that decision and the Fourth Circuit dismissed the appeal on September 6,
2019. *See* Ex. A, Order Dismissing Appeal.

[2] This Court's decision in *Lin* finding Section 1252 does not deprive the district court of jurisdiction
is consistent with the decisions of numerous other courts that have considered the issue. *See De
Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 406–08 (D.N.J. 2018); *Calderon v. Sessions*, 330
F. Supp. 3d 944, 954–56 (S.D.N.Y. 2018); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 456–60
(S.D.N.Y. 2018).

Plaintiffs in this case bring substantially similar APA, INA, and Due Process Clause claims as those in *Lin*, challenging the same misconduct by the Government that was challenged in *Lin*: Plaintiffs do not directly or indirectly challenge the validity of their orders of removal. Rather, they contend that they have a statutory and constitutional right to engage in the provisional waiver process ***before*** their removal. They further contend that the Government disregarded its regulations (and the Constitution) by using the I-130 interview to lure immigrants to be detained and removed. Plaintiffs could not challenge the Government's use of the provisional waiver regulations as a bait-and-switch tactic in immigration court because the immigration court does not have jurisdiction to consider these claims or provide any of the relief sought in this action. *See Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 381 (D. Mass. 2018); *You*, 321 F. Supp. 3d at 459; discussion *infra* Section I.C.1. Indeed, the provisional waiver process was specifically designed to assist aliens who have already gone through the administrative process in immigration court and are subject to orders of removal. Sections 1252(a)(5) and (b)(9) do not strip this Court of jurisdiction.[3]

---

[3] The authority relied on by the Defendants is the same authority upon which they relied in *Lin* and is unavailing. In *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) (hereafter "*AADC*"), the Supreme Court was interpreting the scope of § 1252(g), ***not*** §§ 1252(a)(5) or (b)(9), and the Court rejected the broad interpretation of § 1252(g) that the Government proffers here. The Court's passing reference to 1252(b)(9) as an "unmistakable zipper clause" was not an opinion as to what constitutes a direct or indirect challenge to an order of removal. *Id.* at 483. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031–32 (9th Cir. 2016) was addressing a direct challenge to an order of removal, and the court recognized that §§ 1252(a)(5) and 1252(b)(9) do not apply to "claims that are independent of or collateral to the removal process." *Id.* at 1032. *Aguilar v. I.C.E.*, 510 F.3d 1, 11 (1st Cir. 2007) recognizes that § 1252(a)(9) does not cover claims that are "independent of, or wholly collateral to, the removal process," or "that cannot effectively be handled through the available administrative process," which is precisely the situation with the claims in this action.

**B.      Section 1252(g) Does Not Bar the Plaintiffs' Claims**

Section 1252(g) of the REAL ID Act also does not bar Plaintiffs' claims.  Section 1252(g) limits only "judicial review of ICE's ***prosecutorial discretion*** to engage in three discrete types of actions: to commence proceedings, to adjudicate cases, or to execute removal orders."  *Martinez*, 341 F. Supp. 3d at 406 (citing *AADC*, 525 U.S. at 482–83) (emphasis added).  As this Court recognized in *Lin*:

> Similarly, § 1252(g) also does not bar review of Petitioners' claims. . . .  Because [§ 1252(g)'s] bar on judicial review is limited to a "decision or action by the Attorney General," it has consistently been held to prohibit review of ICE's prosecutorial discretion to commence proceedings, adjudicate cases, or execute removal orders, but not consideration of purely legal questions that do not challenge the Attorney General's discretionary authority. . . .
>
> The Supreme Court's guidance in *Jennings* makes it clear that only the decision or action to execute a removal order is unreviewable—not "any claim that can technically be said to 'arise from' the execution of the removal order."  To conclude otherwise would lead to the same "staggering results" that "no sensible person could have intended" warned of by the *Jennings* Court.  Petitioners do not challenge whether or how the Attorney General may decide to remove Lin; they concede that his removal is inevitable.  They ask only for the opportunity to complete the provisional waiver process provided for in DHS's own regulations.  Therefore, the Court concludes that it has jurisdiction to determine the merits of the case.

*Lin*, 377 F. Supp. 3d at 563 (citations omitted).

Defendants assert that Plaintiffs are challenging ICE's discretionary authority to execute final orders of removal.  *See* Defs.' Resp. 11–12.  However, Plaintiffs are not challenging the Government's ***prosecutorial discretion*** to remove them; rather, they are asserting that the Government ***exceeded its legal authority*** by disregarding its own regulations.  As the court stated in *Martinez*:

> Respondent-Defendants contend that ICE engaged in the third of these types of actions [i.e., that ICE was merely executing a removal order] when it detained and attempted to deport Mr. Martinez.  But that is not what happened.  ICE agents did not track down Mr. Martinez because of his final order of removal.

> Instead they waited until he appeared for an interview pursuant to DHS regulations that permit aliens **in exactly Mr. Martinez's position** to gain legal status, and attempted to frustrate those regulations by detaining Mr. Martinez without warning or explanation. ICE arrested Mr. Martinez because he presented himself for an I-130 interview and, as such, exceeded its legal authority when it chose to arrest him after he had begun a lawful process but before it was completed.

*Martinez*, 341 F. Supp. 3d at 406 (emphasis in original); *see also Calderon*, 330 F. Supp. 3d at 954 ("Petitioner here does not challenge ICE's prosecutorial discretion. Rather, Petitioner challenges ICE's ***legal authority*** to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS."). "Whether [the Government's] actions were legal is not a question of discretion, and, therefore, falls outside the ambit of § 1252(g)." *You*, 321 F. Supp. 3d at 457. Government officials "do not possess discretion to violate constitutional rights or federal statutes." *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (citation omitted).[4] Section 1252(g) does not strip this court of jurisdiction.[5]

---

[4] *Accord Newbrough v. Piedmont Reg'l Jail Auth.*, 2012 WL 169988, at *5 (E.D. Va. Jan. 19, 2012) (immunity provided to government officials for exercising discretion did not shield ICE agents accused of violating plaintiff's constitutional rights because federal officials do not have discretion to violate constitutional rights); *McGee v. Cole*, 115 F. Supp. 3d 765, 778 (S.D.W. Va. 2015) (recognizing that the government has no discretion to disregard the laws regulating it).

[5] The authority relied on by the Defendants is unavailing. In *Hamama v. Adducci*, 912 F.3d 869, 872–73 (6th Cir. 2018), the petitioners were challenging the Government's discretionary decisions to deny their requests to reopen their cases because of purported changed conditions in their home countries. Whether the Government had legal authority to remove them or had disregarded its own regulations was not at issue in that case. The Defendants cite *Jimenez*, in which the court disagreed with other courts' conclusions that § 1252(g) "applies ***only*** to discretionary decisions." 334 F. Supp. 3d at 385 (emphasis in original). This Court considered and rejected that holding from *Jimenez*, finding that § 1252(g) applies only to discretionary decisions. *See Lin*, 377 F. Supp. at 563 (and authority cited therein). The Fourth Circuit has reached the same conclusion. *See Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) ("§ 1252(g) stripped the federal courts of jurisdiction only to review challenges to the Attorney General's decision to exercise her discretion to initiate or prosecute these specific stages in the deportation process."); *Selgeka v. Carroll*, 184 F.3d 337, 341 (4th Cir. 1999) (recognizing that the Supreme Court has narrowly construed § 1252(g) and that it is only "intended to

**C.** **Section 1252 Cannot Strip this Court of Jurisdiction to Hear this Habeas Action**

Even assuming *arguendo* that this Court were to reverse course from *Lin* and find that the REAL ID Act precludes judicial review of Plaintiffs' claims, the statute as construed by the Defendants would violate the Suspension Clause (U.S. Const. art. I, § 9, cl. 2) and therefore is unenforceable with respect to habeas claims.[6] The Government asserts that Section 1252 of the REAL ID Act would not violate the Suspension Clause because (1) Congress has provided an adequate habeas substitute vis-à-vis the immigration courts, and (2) the writ of habeas corpus only serves as a means for challenging one's detention and not to enjoin or stay one's removal. The Government is wrong on both counts.

### 1. Plaintiffs Do Not Have an Adequate Habeas Substitute

The Government concedes that, pursuant to the Suspension Clause, district courts cannot be stripped of habeas jurisdiction unless Congress has provided an adequate habeas substitute. *See* Defs.' Resp. 15. For a substitute procedure to be adequate, the adjudicative body "must have sufficient authority to conduct a meaningful review of both the cause for detention and the Executive's power to detain." *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). At a minimum, the person being detained (or facing removal) must have "meaningful opportunity" to demonstrate that he is being held or removed pursuant to "the erroneous application or interpretation" of

---

protect discretionary decisions of the Executive from judicial review"). Regardless, the court in *Jimenez* **nevertheless held that it had jurisdiction** because the court found that § 1252(g) cannot override the Suspension Clause, which gave it jurisdiction over habeas claims. 334 F. Supp. 3d at 385.

[6] Assuming this Court finds as it did in *Lin* that Section 1252 does not strip the Court of subject matter jurisdiction, it need not decide whether Section 1252 as applied would violate the Suspension Clause. Other courts that have considered similar provisional waiver claims also did not have to consider the Suspension Clause issue because they held that § 1252 did not divest the district court of jurisdiction to hear those claims. *See* discussions of *Martinez*, *Calderon*, and *You*, *supra*.

relevant law, and "the habeas court must have the power to order the conditional release [or relief from removal] of an individual unlawfully detained." *Id.* at 729 (quoting *INS v. St. Cyr,* 533 U.S. 289, 302 (2001)).

Though Section 1252 channels certain types of actions to the administrative removal process in immigration court, those procedures provide no opportunity for Plaintiffs to pursue their claims, and the immigration courts and BIA do not have the jurisdiction or authority to grant them the relief they seek. Plaintiffs are challenging the Government's misconduct that prevents them from pursuing a provisional waiver, in violation of the provisional waiver regulations and their right to due process. Neither the immigration courts nor BIA have jurisdiction or authority to adjudicate constitutional claims or consider the government's violations of the APA and INA. *See Lin*, 377 F. Supp. 3d at 562 (recognizing that the plaintiffs' claims could not be raised in immigration court or the BIA); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 711 (D. Md. 2016) (and authority cited therein) (recognizing that the immigration courts and BIA are courts of limited jurisdiction that cannot consider constitutional claims).[7]

The Defendants point to no other mechanism by which Plaintiffs can get judicial review over their challenge to the Government's failure to follow the provisional waiver regulation, because there is none. The authority cited by the Defendants recognizes that Congress has

---

[7] The immigration courts and BIA also do not have authority to grant Plaintiffs relief accorded through the provisional waiver process and subsequent consular processing. *See* 8 U.S.C. § 1255(a) (immigration judges do not have authority to grant an application for Lawful Permanent Residency if the applicant entered the U.S. without inspection); 8 C.F.R. § 1003.1(b) (limiting jurisdiction of the BIA to appeals from decisions of immigration judges and limited other petitions or applications); *see also* 8 C.F.R. § 1240.1(a)(1)(ii) (immigration judges do not have authority to grant an I-212 waiver of inadmissibility under 8 U.S.C. § 1182(a)(9)(A)). In addition to the jurisdictional deficiencies, immigration courts cannot reopen a case so that an alien may pursue a provisional waiver through the normal process via USCIS. Reopening Plaintiffs' cases would make them ineligible for a provisional waiver. *See Jimenez*, 334 F. Supp. 3d at 382 (citing 8 C.F.R. § 212.7(e)(4)(iii)).

provided a forum for aliens to seek review of an immigration court's removal order or to reopen their immigration cases, neither of which Plaintiffs are seeking to do. *See* Defs.' Resp. 15. Even if Plaintiffs obtain provisional waivers, those waivers will not invalidate the removal order. Plaintiffs have never been afforded any opportunity for any court to consider their provisional waiver-related claims. *See Jimenez*, 334 F. Supp. 3d at 381–82 (pursuant to Suspension Clause, district court had habeas jurisdiction to hear claims substantially similar to those in this case).

Contrary to the Defendants' assertion (*see* Defs.' Resp. 15), Plaintiffs do not have the option to file for a petition for review in the Fourth Circuit to seek resolution of their claims pursuant to Section 1252(a)(2)(D). Section 1252(a)(2)(D) "is not an independent grant of jurisdiction"; it merely preserves the jurisdiction of the Circuit court ***to hear legal or constitutional challenges to a final order of removal***. *Sanchez-Naranjo v. Holder*, 510 F. App'x 759, 760 (10th Cir. 2013) (citing *Hamilton v. Gonzales*, 485 F.3d 564, 567 (10th Cir. 2007)); *see also Saintha v. Mukasey*, 516 F.3d 243, 248 (4th Cir. 2008) (recognizing that Section 1252(a)(2)(D) provides a "limited exception" to the rule that Circuit Courts may not "review final orders of removal," to review legal or constitutional challenges to the validity of the final order of removal). As discussed *supra*, Plaintiffs are not challenging the validity of their orders of removal and would be unable to bring these claims in removal proceedings.

2. The Suspension Clause Applies to Removal-Related Claims

Defendants also argue that the Suspension Clause applies only to detention and not to removal-related claims. Defs.' Resp. 12–14. This argument was squarely rejected by the Supreme Court in *St. Cyr*, which recognized that the Suspension Clause also protects habeas claims challenging an alien's removal. *See* 533 U.S. at 300 ("some judicial intervention in deportation cases is unquestionably required by the Constitution") (internal quotations omitted); *see also id.* at

305 ("[T]o conclude that the writ is no longer available in this context would represent a departure from historical practice in immigration law."); *Heikkila v. Barber*, 345 U.S. 229, 230 (1953) (recognizing that historically, "habeas corpus was the only remedy by which deportation orders could be challenged in the courts").[8] In *St. Cyr*, the petitioners did not seek release from detention but, rather, were challenging their removal. The Court construed the INA to find habeas jurisdiction, emphasizing that the INA would have raised "serious" Suspension Clause problems had it eliminated habeas review over petitioners' removal orders. *St Cyr*, 533 U.S. at 305. As the Fourth Circuit has recognized:

> In *St. Cyr,* the Supreme Court rejected the INS' contention that the 1996 amendments to the INA, 8 U.S.C. §§ 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9), "stripped the courts of [habeas] jurisdiction" to consider a discrete question of law relating to a petitioner's removal. As the Supreme Court observed, before the 1996 amendments, district courts had authority to decide such a habeas petition, and any construction of the statutes to withdraw that authority would raise "a serious Suspension Clause issue."

*Dragenice v. Ridge*, 389 F.3d 92, 99 (4th Cir. 2004) (quoting *St. Cyr*, 533 U.S. at 298, 305); *see also Malm v. Ashcroft*, 2004 WL 964278, at *4 (D. Md. May 4, 2004) ("Holdings subsequent to *St. Cyr* generally have reaffirmed federal court … habeas jurisdiction over final removal orders brought by aliens facing removal…").[9]

---

[8] The Government mischaracterizes *Heikkila*'s distinction of habeas corpus from "injunctions, declaratory judgments, and other forms of relief." *See* Defs.' Resp. 14. The Supreme Court noted that, historically, habeas corpus was the only form of relief available for an alien challenging his or her removal and other forms of relief were not available. The Court was very clearly recognizing that habeas corpus is (and historically has been) a mechanism to enjoin or stay removal. *Heikkila*, 345 U.S. at 230.

[9] *Accord Sandoval v. Reno*, 166 F.3d 225, 233 (3d Cir. 1999) (canvassing the long "availability of habeas to challenge immigration decisions" where petitioner sought to challenge removal); *Devitri v. Cronen*, 290 F. Supp. 3d 86, 90 (D. Mass. 2017) ("'Custody' is not limited to physical detention. Final orders of removal have been held to satisfy the custody requirement."). Numerous courts have similarly recognized that the "in custody" requirement under the federal habeas statute, 28 U.S.C. § 2241(c), is satisfied where aliens are subject to a final order of removal, even if they are not physically detained. *See, e.g.*, *Futeryan-Cohen v. I.N.S.*, 140 F. Supp. 2d 646, 652 (E.D. Va.

None of the authority relied on by the Government even remotely supports its argument that habeas jurisdiction does not apply to Plaintiffs' removal-related claims. *Munaf v. Geren*, 553 U.S. 674 (2008) did not involve an alien bringing removal-related claims. Rather, the court was addressing whether U.S. citizens who traveled voluntarily to Iraq and were detained there by the U.S. military could challenge being transferred to Iraqi authorities for crimes they allegedly committed. The Court unanimously found habeas jurisdiction. *Id.* at 685–88.[10] *Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) also supports that this Court has jurisdiction. The court recognized that under *St. Cyr*, habeas jurisdiction would clearly extend to an alien's claim seeking to be "*released into* and remain in the United States" as opposed to the petitioners in that case who were seeking withholding of removal, which would only prevent them from being removed to one particular country and gave them no right to remain in the United States. *Id.* (citations omitted, emphasis in original).[11]

---

2001), *vacated on other grounds*, 34 F. App'x 143 (4th Cir. 2002); *Rosales v. Bureau of Immigration & Customs Enforcement*, 426 F.3d 733, 735 (5th Cir. 2005); *Simmonds v. I.N.S.*, 326 F.3d 351, 355 (2d Cir. 2003); *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001); *Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1021 n.4 (6th Cir. 1999); *Nakaranurack v. U.S.*, 68 F.3d 290, 293 (9th Cir. 1995).

[10] The Court rejected the habeas claim on its merits, holding that under sovereignty principles, a U.S. court cannot prevent persons in Iraq from being transferred to Iraqi authorities. *Munaf,* 553 U.S. at 697–98. The Court further recognized that if the petitioners were released by the U.S. military, they would be arrested by Iraqi authorities, precisely what they were seeking to avoid. *Id.*

[11] The dissent in *Hamama* argued that the majority's interpretation of *St. Cyr* was too narrow and was contrary to *Munaf,* where the Supreme Court found habeas jurisdiction. *See id.* at 882–83.

## II. Plaintiffs State Viable Claims Based on the Government's Interference with Their Attempts to Obtain Provisional Waivers, and Plaintiffs Are likely to Succeed on the Merits of those Claims

### A. Plaintiffs State a Viable Claim Under the APA

Defendants' argument that the Plaintiffs cannot challenge the Government's "discretionary decision to execute valid, final orders of removal" (*see* Defs.' Resp. 16) is simply a rehash of their erroneous argument that Section 1252(g) bars Plaintiffs' claims.[12] As discussed *supra* in Section I.B, Plaintiffs are ***not challenging the Government's discretion to remove them***; rather, they are asserting that the Government exceeded its legal authority by disregarding its own regulations, and the Government does not have discretion to violate its own rules and regulations or the Constitution. Plaintiffs' APA claim is not a challenge to an action committed to agency discretion. *See Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981) ("even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations").[13]

The Defendants' argument that the ultimate grant of a provisional waiver is discretionary (*see* Defs.' Resp. 16–17) misses the point. Plaintiffs do not seek an order from the Court ***granting*** them a discretionary benefit or even adjudicating their eligibility. Rather, they are simply seeking

---

[12] Contrary to the Defendants' assertion, this argument was considered and rejected in *Lin*. *See Lin*, 377 F. Supp. 3d at 563 (recognizing that the plaintiff's claims in that action are not challenging ICE's prosecutorial discretion to execute a removal order).

[13] *Accord Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) ("[W]e have read the § 701(a)(2) exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. And we have generally limited the exception to certain categories of administrative decisions that courts traditionally have regarded as committed to agency discretion, such as a decision not to institute enforcement proceedings, or a decision by an intelligence agency to terminate an employee in the interest of national security.") (citations and internal quotations omitted).

the access to the process to which the regulations entitle them. *See Saint Fort v. Ashcroft*, 329 F.3d 191, 203 (1st Cir. 2003) ("[I]f a statute makes an alien eligible to be considered for a certain form of relief," while he may be unable to challenge "the agency's decision to exercise or not exercise its discretion to grant relief," he may still "raise on habeas the refusal of the agency to even consider him.").

As this Court recognized in *Lin*, Plaintiffs have stated a viable APA claim and are likely to succeed on the merits of that claim:

> The APA bars agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. An agency action is arbitrary and capricious when the agency disregards rules or regulations still in effect or departs from a prior policy without articulating a satisfactory explanation for its action including a rational connection between the facts found and the choice made. An agency changing its course must supply a reasoned analysis, and the court may not infer the agency's reasoning from mere silence. In short, an agency may not depart from a prior policy *sub silentio* or simply disregard rules that are still on the books.
>
> Defendants effectively used the I-130 interview to lure Lin to his arrest, preventing him from completing the provisional waiver process. Defendants have thus taken a rule that was promulgated for one purpose and used it for the opposite purpose. As the *Calderon* and *Martinez* courts also concluded, this is precisely the kind of arbitrary and capricious behavior the APA is designed to prevent. Defendants have not, and cannot, reconcile the purpose of the DHS rule and an apparent policy of arresting and deporting applicants who arrive for their I-130 interviews. If left unchecked, this "new policy" would render the provisional waiver a nullity.

*Lin*, 377 F. Supp. 3d at 564.

**B.      Plaintiffs State a Viable Claim for Violation of Their Due Process Rights**

The Defendants' argument that the Court "does not have jurisdiction over direct challenges to removal orders" (Defs.' Resp. 17) is just a repeat of their erroneous jurisdictional argument. As discussed in Section I.A *supra*, Plaintiffs are not challenging their orders of removal. *See also Lin*, 377 F. Supp. 3d at 562 (recognizing that plaintiffs "do not seek judicial review of [Lin's] order of removal").

The Defendants argue that there is no cognizable liberty interest because none of the Plaintiffs have met the eligibility requirements to obtain an I-601A as they do not yet have an approved I-212, and therefore they have no liberty interest to *receive a granted* I-601A. *See* Defs.' Resp. 17–18. The Defendants misstate the cognizable liberty interest in this case. The Plaintiffs are challenging the Defendants' unlawful actions **to deliberately prevent** Plaintiffs from completing the I-212 or I-130 so that they can apply for an I-601A.

Plaintiffs have a liberty interest in **accessing the provisional waiver process** without Government interference that **makes it impossible for Plaintiffs to ever be eligible** for an I-601A. There is a cognizable liberty interest in having the Government honor its own rules and regulations, and the Government is not free to ignore its own regulation and surreptitiously adopt a policy or practice of denying Plaintiffs the right to pursue the provisional waiver.[14] *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("[I]t is incumbent upon agencies to follow their own procedures . . . even where [they] are possibly more rigorous than otherwise would be required"); *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Morgan*, 193 F.3d 252, 267 (4th Cir. 1999) (recognizing that under *Accardi* doctrine, it is prejudicial for agencies to disregard a procedural framework meant to protect the fair processing of an action).[15] The Government may

---

[14] The Defendants' misconduct is not only a disregard of the provisional waiver regulations, it is also a disregard of its own internal policies as reflected in the USCIS Field Manual. *See* discussion *infra* at 16–17.

[15] *See also United States v. Heffner,* 420 F.2d 809, 811–12 (4th Cir. 1969) (IRS agents failing to follow agency procedure violated the broad sweep of the *Accardi* doctrine, which was meant to prevent "the arbitrariness which is inherently characteristic of an agency's violation of its own procedures"); *Yanez-Marquez v. Lynch,* 789 F.3d 434, 474 (4th Cir. 2015) ("We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.") (internal quotations omitted); *Abdulai v. Ashcroft*, 239 F.3d 542, 550 (3d Cir. 2001) (non-U.S. citizens seeking adjudication of a discretionary immigration benefit are entitled to "an individualized determination"); *Leslie v. Attorney Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010) (relying on the *Accardi* doctrine to hold that "when an agency promulgates a regulation

not altogether abrogate the provisional waiver process by arresting individuals at their marriage interviews.[16]

Separate and apart from their due process interest in being permitted to pursue provisional waivers, Plaintiffs also have a cognizable due process interest in not being lured to USCIS to pursue rights and benefits to which they are legally entitled and then being detained and removed. *See Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 796 (9th Cir. 2004), *overruled on other grounds*, 508 F.3d 1227 (9th Cir. 2007)(finding that the use of the adjustment of status procedure to surprise applicants with arrest and deportation raises fundamental due process concerns); *Chacon-Corral v. Weber*, 259 F. Supp. 2d 1151, 1164 (D. Colo. 2003) (finding that the Government's use of a pending application for adjustment of status as a "ruse for requiring Petitioner to appear voluntarily at the INS offices" in order to effect an easy arrest "evokes a Kafka-esque approach to the rounding up and deportation of illegal immigrants chilling in its imperviousness to principles of due process").[17] The Government has nullified the provisional waiver regulations by luring immigrants to its offices for an I-130 interview and then having ICE arrest and detain them, thereby

---

protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation").

[16] The cases cited by the Defendants involve matters in which the Government did not foreclose an opportunity to the plaintiffs, and were not the result of Government interference and deliberate obstruction. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573–74 (1972) ("there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. …. Had it done so, this, again, would be a different case."); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60 (1999) (finding that the statutory requirements were not met to receive benefits for medical treatment, not that any government action prevented *access to the process* for those benefits); *Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456, 461 (4th Cir. 2017) (finding that the plaintiff did not meet the eligibility requirements for developing a storage facility, not that the defendants prevented him from fulfilling one of the requirements).

[17] *See also* Plaintiffs' initial Memorandum of Law in support of their Motion for Preliminary Injunction (Dkt. 7), at 24 (citing *Raley v. Ohio*, 360 U.S. 423, 426, 438-439 (1959)).

making it impossible for immigrants to pursue the next steps of the provisional waiver process and scaring away countless others from even pursuing a legal status and a waiver. It is precisely this "Kafka-esque" practice by the Defendants that violates fundamental due process and that is at the heart of Plaintiffs' claims in this case. ***The Defendants' Response does not even address this separate and distinct ground supporting Plaintiffs' due process claim.***

### C.     Plaintiffs State a Viable Claim Under the INA

Plaintiffs have also properly stated, and are likely to succeed on, their claim that the Government's disregard of the provisional waiver regulations is also a violation of the INA. The Defendants argue that the language of the provisional waiver regulations do not require a stay of removal while an immigrant is pursuing a provisional waiver and do not limit ICE's discretion to remove an immigrant pursuing a waiver. *See* Defs.' Resp. 20. But as discussed *supra*, Plaintiffs are not challenging the Government's discretion to remove immigrants who are subject to orders of removal. Rather, Plaintiffs are challenging the Government's unlawful nullification of the provisional waiver regulations and its surreptitious policy of using those regulations to lure immigrants to be arrested, detained, and removed. Plaintiffs were specifically given the opportunity to pursue provisional waivers, despite having a final order of removal, and ICE may not engage in a policy or practice that nullifies those regulations.

The fact that the Defendants are violating the INA is strongly supported by the USCIS Field Manual. The USCIS Field Manual states, "As a general rule, any alien who appears for an interview before a USCIS officer in connection with an application or petition seeking benefits under the Act shall *not* be arrested during the course of the interview, even though the alien may be in the United States illegally." USCIS Field Manual § 15.1(c)(2) (emphasis added). The Defendants argue that the protections offered by the USCIS Field Manual do not

carry the force of law.  *See* Defs.' Resp. 20–21.  The Defendants cite to this Court's order granting

a TRO in *Lin v. Nielsen*.  But in granting the TRO, the Court recognized that the manual is "further

***evidence*** of what is apparent on the face of the provisional waiver program: the very existence of

the program is nullified if ICE agents can use the application process as a honeypot to trap

undocumented immigrants who seek to take advantage of its protections.  Such an action is

arbitrary and capricious absent agency justification for the change in policy."  *Lin v. Nielsen*, No.

GJH-18-2548, Order at ECF No. 6, at 4 (emphasis added).  Courts frequently rely on the USCIS

Field Manual as an aid for construing immigration-related laws and regulations and determining

whether the Government is in compliance with those laws and regulations.  *See, e.g.*, *Scialabba v.

Cuellar de Osorio*, 573 U.S. 41, 90 (2014); *Musunuru v. Lynch*, 831 F.3d 880, 890 (7th Cir. 2016);

*Tadevosyan v. Holder*, 743 F.3d 1250, 1256–57 (9th Cir. 2014).[18]   The USCIS Field Manual is

evidence that the Defendants' use of the marriage interview to lure immigrants to be detained is

unlawful and is also indicative of DHS's own recognition that such conduct is unlawful.[19]

Moreover, regardless of whether the USCIS Field Manual is binding or an aid for construing the

---

[18] *Accord Abdi v. Duke*, 280 F. Supp. 3d 373, 389 (W.D.N.Y. 2017), *partially vacated on other grounds*, 2019 WL 4621898, at *1 (W.D.N.Y Sept. 24, 2019) (holding that ICE's policy memo governing parole determinations is binding on the agency); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336 (D.D.C. 2018) (same); *Pasquini v. Morris*, 700 F.2d 658, 663 n.1 (11th Cir. 1983) ("Although the [INS] internal operating instruction confers no substantive rights on the alien-applicant, it does confer the procedural right to be considered for such status upon application.").

[19] Defendants also mischaracterize Section 15.1(c)(2) as giving the Government unfettered authority to arrest immigrants at their interviews for any reason at all. See Defs.' Resp. 21.  In fact, that section merely states that an "alien's actions or situation ***may be so egregious*** as to justify making an exception to the general rule," and provides as examples aliens who (i) are subject to an outstanding arrest warrant for criminal violations, (ii) assault someone during the interview; (iii) willfully destroy government property during the interview; (iv) are a threat to the safety of another person, or (v) "any other ***similar*** action or situation." USCIS Field Manual § 15.1(c)(2) (emphasis added).  The Government does not and cannot contend that any of the Plaintiffs committed any sort of similar egregious action that falls under these exceptions.

law, ***the provisional waiver regulations are binding*** and the Defendants are not free to disregard or nullify those regulations.

The Defendants are also incorrect in arguing that the Court should show deference to the Government's so-called "interpretation" of the provisional waiver regulations.[20]  Deference to agency interpretation is warranted only when the regulation is *genuinely* ambiguous and cannot be "*de facto* a new regulation".  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).  The regulations 8 C.F.R § 212.2(j) and 8 C.F.R. § 212.7(e) here are unambiguous: They unquestionably create a process that allows individuals with final orders of removal to obtain legal status by way of their U.S. citizen spouse, and to apply for waivers allowing them to remain in the United States with their families during that process.

Even if, assuming *arguendo*, the language of the provisional waiver regulations was ambiguous, the Defendants' interpretation of the regulations is not reasonable.  *See Kisor*, 139 S. Ct. at 2415–16 ("If genuine ambiguity remains, moreover, the agency's reading must still be

---

[20]  The Defendants baldly assert that the Government's actions are consistent with its "interpretation" of the provisional waiver regulations but cite to no official position or any other evidence evidencing how the Government interprets those regulations.  *See* Defs.' Resp. 21.  This so-called "interpretation" is nothing more than a post-hoc, litigation-driven argument by Defendants, for which the Government is afforded no deference.  *See Romero v. Barr*, --- F.3d --- -, 2019 WL 4065596, at *5 (4th Cir. Aug. 29, 2019) ("not every reasonable agency reading should be accorded deference"; the agency interpretation must be the agency's official position, it must implicate substantive expertise and must be the result of "fair and considered judgment" and not "post hoc rationalization" and "convenient litigating positions") (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)); *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 213 (4th Cir. 2009) ("deference [to an agency interpretation] may not be required when the agency's advocated interpretation is one that it has just adopted for the purpose of litigation and that is 'wholly unsupported by regulating, rulings, or administrative practice.'") (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988)); *Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 719 (4th Cir. 2016), *vacated on other grounds*, 137 S. Ct. 1239 (2017) (An agency interpretation "will not be accorded *Auer* deference, when the interpretation conflicts with a prior interpretation, when it appears that the interpretation is no more than a convenient litigating position, or when the interpretation is a *post hoc* rationalization.").

'reasonable' . . . And let there be no mistake: That is a requirement an agency can fail."). The Defendants make the absurd argument that to the extent the regulations are ambiguous, they are meant to allow ICE the discretion to await and entrap people at their I-130 interviews, and that because nothing in the regulations specifically addresses this conduct, they therefore must be allowed to do it. This "interpretation" of the provisional waiver regulations is plainly erroneous and unreasonable. Defendants may not nullify the regulations wholesale through a *de facto* repeal, and exploit the promise of a provisional waiver and gaining legal status as a ruse to entrap them. Such an interpretation circumvents the entire purpose of the regulations.

A court will also not "defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties." *Kisor*, 139 S. Ct. at 2417–18. Arresting, detaining, and removing immigrants who are showing up to USCIS to take advantage of regulations intended to permit them to seek legal status is precisely the sort of "unfair surprise" which makes agency deference inappropriate in this case. *See Romero*, 2019 WL 4065596, at *7 (rejecting Government's proffered interpretation of immigration regulations because "even if we were to assume that the regulations were ambiguous . . . the Attorney General's reading of the regulations does not warrant deference because it amounts to an 'unfair surprise' disrupting the regulated parties' expectations").

III.    **This Court May Enter Preliminary Relief on Behalf of the Proposed Class Prior to Class Certification**

In a footnote, the Defendants argue that "the Court should not grant preliminary injunctive relief to absent members of the uncertified class." *See* Defs.' Resp. 2 n. 1. This argument is without merit. "[C]ourts may enter class-wide injunctive relief before certification of a class." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2019 WL 3536786, at *4 (D. Md. Aug. 2, 2019) (Hazel, J.) (and authority cited therein); *see also Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433

(6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification."); *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1148 (D. Kan.), *aff'd*, 691 F. App'x 900 (10th Cir. 2016) ("case law supports this Court's authority to issue classwide injunctive relief based on its general equity powers before deciding the class certification motion").[21]

The case cited by Defendants does not address whether a court can issue preliminary injunctive relief on behalf of an uncertified class. It does not even discuss injunctive relief at all and is completely irrelevant. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F. 3d 334, 340 (4th Cir. 2006). Moreover, the Defendants make this erroneous argument after counsel for Plaintiffs accommodated the Defendants' counsel and consented to staying Defendants' time to respond to Plaintiffs' pending Motion to Certify Class until after Defendants' motion to dismiss is adjudicated. If, assuming *arguendo*, the Court could not grant preliminary relief to the uncertified class (and it clearly can), then the Court should direct Defendants to immediately respond to the pending Motion to Certify Class, which was filed over 45 days ago.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss and issue a preliminary injunction in favor of Plaintiffs and the proposed class.

---

[21] *See also Lee v. Orr*, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) ("The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons.") (internal quotations omitted); *McGlothlin v. Connors*, 142 F.R.D. 626, 641 (W.D. Va. 1992) ("class certification is not necessary prior to issuing a preliminary injunction") (citation omitted); 2 Newberg on Class Actions § 4:30 (5th ed. 2013) ("a court may issue a preliminary injunction in class suits prior to a ruling on the merits").

Dated: October 1, 2019
Baltimore, MD

Respectfully Submitted,

_____/s/ Nathaniel S. Berry, Esq._____
Nicholas T. Steiner, Esq. (Bar No. 19670)
David Rocah, Esq. (Bar No. 27315)
**AMERICAN CIVIL LIBERTIES UNION OF MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 350
Baltimore, MD 21211
Telephone: (410) 889-8550
steiner@aclu-md.org
rocah@aclu-md.org

Seth A. Rosenthal, Esq. (Bar No. 17080)
Nathaniel S. Berry, Esq. (Bar No. 29278)
Katherine K. Sochacki, Esq. (*pro hac vice*)
**VENABLE LLP**
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 244-7400
Facsimile: (410) 244-7742
sarosenthal@venable.com
nsberry@venable.com
kksochacki@venable.com

*Counsel for Plaintiffs*