# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **ALYSE SANCHEZ,** *et al.*, | \* |
| Plaintiffs-Petitioners, | \* |
| v. | Case No.: GJH-19-1728 |
| **KEVIN MCALEENAN,** *et al.*,[1] | \* |
| Defendants-Respondents. | \* |

## MEMORANDUM OPINION

Undocumented spouses of American citizens who entered the United States without inspection or who have been ordered removed from the United States are eligible to apply for lawful status that will permit them to reside permanently in the United States, but only after leaving the United States to complete a procedure called consular processing. This process often results in long periods of family separation, and many spouses have thus chosen not to apply for lawful status. In 2016, in recognition of this problem, United States Customs and Immigration Services ("USCIS"), a component of the United States Department of Homeland Security ("DHS"), promulgated a rule that allowed spouses with final orders of removal to apply for a provisional waiver of inadmissibility prior to leaving the United States, thus reducing the length of the consular processing procedure.

Plaintiffs-Petitioners ("Petitioners") are married couples—each comprising one American citizen and one noncitizen with a final order of removal—who applied for this provisional waiver only for Immigration and Customs Enforcement ("ICE") to detain the noncitizen spouse at the

---
[1] Respondent McAleenan is no longer the Acting Secretary of Homeland Security. Under Fed. R. Civ. P. 25(d), his successor is automatically substituted as a party.

1

required waiver interview or who chose not to apply for the waiver out of fear that the noncitizen spouse would be detained at the waiver interview. ECF No. 6. Defendants-Respondents ("Respondents") are the Acting Secretary of Homeland Security, the Acting Director of ICE, and the Director of ICE's Maryland Field Office. *Id.*

On behalf of themselves and a proposed class of all others similarly situated, Petitioners challenge ICE's practice of detaining noncitizens who come to USCIS for their waiver interview on the grounds that the practice violates the Immigration and Nationality Act ("INA"), the Due Process Clause, and the Administrative Procedure Act ("APA"). *Id.* Currently pending before the Court is Petitioners' Motion for Preliminary Injunction, ECF No. 7, and Respondents' Motion to Dismiss, ECF No. 15. No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Petitioners' Motion for Preliminary Injunction is granted and Respondents' Motion to Dismiss is denied.

## I. BACKGROUND

### A. Legal Background

An alien "who has been ordered removed" is inadmissible for reentry to the United States for five, ten, or twenty years from the date of departure or removal, depending on whether the alien is removed upon arrival, is removed after arrival, has already been removed once before, or has been convicted of an aggravated felony.[2] 8 U.S.C. § 1182(a)(9)(A)(i)–(ii); 8 C.F.R. 212.2(a). An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United States as a lawful permanent resident. 8 U.S.C. § 1182(a). This inadmissibility may be waived by

---

[2] The Court recognizes that "many consider 'using the term 'alien' to refer to other human beings' to be 'offensive and demeaning.' [The Court uses] the term 'only where necessary to be consistent with the statutory language' that Congress has chosen and 'to avoid any confusion in replacing a legal term of art with a more appropriate term.'" *See Trump v. Hawaii*, 138 S.Ct. 2392, 2443 n.7 (2018) (Sotomayor, J., dissenting) (quoting *Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548, 551–52 n.1 (6th Cir. 2013)).

the Secretary of Homeland Security's consent to reapply for admission, 8 U.S.C. § 1182(a)(9)(A)(iii), but the waiver application process can take well over a year, 78 Fed. Reg. 536-01, 536 (Jan. 3, 2013). Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for this waiver of admissibility was first required to depart from the United States. *Id*.

In 2013, recognizing that undocumented immediate family members of citizens who were living in the United States were choosing to forego applying for visas rather than be separated from their families for at least a year, and potentially longer, DHS promulgated a rule "to allow certain immediate relatives of U.S. Citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." *Id*. ("[M]any immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa."). The rule was expressly promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," *id*., and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]," *id*. at 567. In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens with final removal orders. 81 Fed. Reg. 50244 (July 29, 2016).

The process requires first filling out a Form I-130, which establishes a qualifying relationship to a United States citizen. 78 Fed. Reg. 536-01 at 547–48. After the Form I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, pursuant to 8 C.F.R. § 212.2(j), can be conditionally approved while the individual remains in the United States. *Id.* Once the I-212 is conditionally approved, the individual must complete

Form I-601A, an application for a provisional unlawful presence waiver. *Id.*; *see also* 8 C.F.R. § 212.7(e)(4)(iv). Once the waiver is approved, the individual departs from the United States to obtain the immigrant visa through the consular processing procedure, thereby executing the prior removal order. *See* 8 U.S.C. § 1101(g).

### B. Factual Background

#### i. Alyse Sanchez and Elmer Onan Sanchez Hernandez

Petitioners Alyse Sanchez and Elmer Onan Sanchez Hernandez have been married since August 7, 2013. ECF No. 6 ¶ 39. They have two children together. *Id.* As the owner of a home remodeling company, Mr. Sanchez Hernandez is the family's primary income earner. *Id.* ¶ 48. Ms. Sanchez is a United States citizen, and Mr. Sanchez Hernandez is a citizen of Honduras and was ordered removed from the United States *in absentia* on September 6, 2005 because he did not receive notice of his hearing. *Id.* ¶ 40. Ms. Sanchez submitted an I-130 petition on behalf of her husband on September 4, 2018, *id.* ¶ 41, and the couple was scheduled for an interview at the USCIS-Baltimore Field Office on May 7, 2019 to determine whether they were in a bona fide marriage relationship, *id.* ¶ 42. Although the USCIS interviewer approved the I-130 petition, ICE arrested and detained Mr. Sanchez Hernandez at the conclusion of the interview and transferred him to the Frederick County Adult Detention Center. *Id.* ¶ 42–44. Mr. Sanchez Hernandez was under immediate threat of removal to Honduras, where he feared for his life; he attempted to have his removal case reopened to prevent his deportation, but his motion to reopen was denied on June 3, 2019. *Id.* ¶¶ 44, 50. Respondents only agreed to Mr. Sanchez Hernandez's conditional release once Petitioners filed the instant case on June 19, 2019. *Id.* ¶ 51.

### ii. Jean Claude Nana and Amira Abbas Abdalla

Petitioners Jean Claude Nana and Amira Abbas Abdalla have been married since April 14, 2017. ECF No. 6 ¶ 53. They have no children together, but they care for their younger siblings as their own children. *Id.* ¶ 54. Ms. Abdalla is a naturalized citizen of the United States, and Mr. Nana is a citizen of Cameroon. *Id.* ¶ 53. Mr. Nana originally entered the United States with a B-1 visitor's visa on April 19, 2011. *Id.* ¶ 55. He claimed asylum based on fear of persecution for his political opinions, but he was denied and ordered removed on May 3, 2016, and his appeals to the Board of Immigration Appeals and the Fourth Circuit were subsequently denied on February 17, 2017 and October 12, 2017, respectively. *Id.* ¶ 55. Ms. Abdalla filed an I-130 petition on behalf of her husband on June 1, 2017. *Id.* ¶ 56. The couple attended their marriage interview on August 22, 2018 at the USCIS-Baltimore Field Office, but Mr. Nana was detained after the interview. *Id.* ¶ 57. He was held for 296 days, but Petitioners' counsel was able to negotiate his release and a delay in his removal in connection with this case. *Id.* ¶ 58. Petitioners remain in fear that Mr. Nana will be taken away and are distrustful of the United States government and the provisional waiver process. *Id.* ¶¶ 62–63.

### iii. Misael Rodriguez Peña and Theresa Rodriguez Peña

Petitioners Misael Rodriguez Peña and Theresa Rodriguez Peña were married on March 8, 2010. ECF No. 6 ¶ 64. They have four children together, and Mr. Rodriguez Peña has two additional children from a prior relationship who live with Petitioners and are under their care. *Id.* Ms. Rodriguez Peña is a United States citizen, and Mr. Rodriguez Peña is a citizen of Honduras and was ordered removed *in absentia* by an immigration court in San Antonio, Texas on August 10, 2005. *Id.* ¶ 65. Ms. Rodriguez Peña submitted an I-130 petition on behalf of her husband on March 26, 2018, and their marriage interview was scheduled for May 6, 2018. *Id.* ¶

66. When Petitioners' attorney notified them of reports that ICE was arresting potential I-130 beneficiaries during their marriage interviews, they became anxious and decided that only Ms. Rodriguez Peña and their attorney would attend the interview. *Id.* The interviewer, however, would not complete the interview without Mr. Rodriguez Peña present. *Id.* ¶¶ 67–68. Petitioners are concerned that their application will be denied because Mr. Rodriguez Peña did not attend the I-130 interview and that they will have to go through the process again and risk his arrest. *Id.* ¶ 69.

### iv. Jose Carlos Aldana Martinez and Olivia Aldana

Petitioners Jose Carlos Aldana Martinez and Olivia Aldana were married on February 24, 2018. ECF No. 6 ¶ 70. They have one child together, and they are also caregivers for Mr. Aldana Martinez's son who has developmental delays, ADHD, anxiety, and depression and requires specialized services and care. *Id.* Mr. Aldana Martinez is the family's primary income earner. *Id.* ¶ 76. Ms. Aldana is a United States citizen, and Mr. Aldana Martinez is a Mexican citizen with a final order of removal issued on March 6, 2018. *Id.* ¶¶ 70, 71. Ms. Aldana submitted an I-130 petition on behalf of her husband on May 21, 2018, and the marriage interview was scheduled for June 14, 2019. *Id.* ¶ 72. When Petitioners' attorney informed them of reports that ICE was arresting potential I-130 beneficiaries during the marriage interview, they became nervous and did not want Mr. Aldana Martinez to attend. *Id.* Ms. Aldana attended alone, but the interviewer would not conduct the interview without Ms. Aldana's husband present. *Id.* ¶ 73. The interview has not yet been rescheduled, and Petitioners remain anxious that Mr. Aldana Martinez will be detained and deported. *Id.* ¶¶ 75, 76.

####### v. Mwiti Murithi and Tatyana Murithi

Petitioners Mwiti Murithi and Tatyana Murithi were married on May 23, 2014. ECF No. 6 ¶ 77. Ms. Murithi is a United States citizen and Mr. Murithi is a citizen of Kenya. *Id.* Mr. Murithi came to the United States on an employment visa in 2004, and he received a student visa in 2009 to study cell biology and molecular genetics at the University of Maryland, College Park. *Id.* ¶ 78. While he was in school, he fell behind on tuition payments and could not continue his studies, thus breaching his student visa. *Id.* ¶ 79. He was granted voluntary departure on December 8, 2010, but he never departed, so his voluntary departure order was converted to a final removal order on April 7, 2011. *Id.* ¶¶ 79–80. Mr. Murithi was arrested in November of 2011 but was released on an order of supervision in August 2012 due to ICE's inability to obtain travel documents for him. *Id.* ¶ 80. He was able to gather enough funds to reenroll in school, and he graduated with a Bachelor of Science in Molecular Biology and Genetics in May of 2017. *Id.* Ms. Murithi filed an I-130 petition on behalf of her husband on July 2, 2018, and the marriage interview was scheduled for June 7, 2019. *Id.* ¶ 81. When Petitioners' attorney informed them of ICE's practice of arresting noncitizen spouses at the marriage interview, they became afraid and decided to postpone their interview. *Id.* At the time the Amended Complaint was filed, they had not yet received notice of the rescheduled interview, but they assume it will come soon. *Id.* ¶ 82. The Murithis want to start a family, but they are putting off having children because they do not want to subject their children to the fear of Mr. Murithi's deportation and the resulting instability. *Id.* ¶ 83.

####### vi. Eric Ndula and Bibiana Ndula

Petitioners Eric Ndula and Bibiana Ndula were married on August 21, 2015. ECF No. 6 ¶ 84. They have two children together and are also the primary caregivers for Ms. Ndula's

7

daughter from a previous relationship. *Id.* Ms. Ndula is a naturalized citizen of the United States, and Mr. Ndula is a citizen of Cameroon. *Id.* He came to the United States in 2000 to seek asylum, but he was denied. *Id.* ¶ 85. His appeal to the Board of Immigration Appeals was denied on November 13, 2002, when a final order of removal was also issued, and his petition for review to the Fourth Circuit was denied on January 13, 2004. *Id.* Ms. Ndula submitted an I-130 petition on her husband's behalf on September 21, 2017, and the marriage interview was scheduled for August 24, 2018. *Id.* ¶ 86. When Petitioners learned from their attorney about ICE's practice of arresting noncitizen spouses at the interview, they decided to postpone their interview two separate times. *Id.* Their I-130 petition is still pending, but they are afraid that if they try to postpone the interview again, the petition will be considered abandoned. *Id.* The stress of this process has worsened Ms. Ndula's hypertension and sleep apnea, and Mr. Ndula fears going back to a country where he has not lived in twenty years and which is dangerous for non-French-speaking Cameroonians, like Mr. Ndula, who are being marginalized and killed by the Francophone majority. *Id.* ¶ 87.

### C. Procedural Background

Petitioners Sanchez and Sanchez Hernandez filed a Complaint in this Court on June 13, 2019. ECF No. 1. On August 5, 2019, Petitioners filed an Amended Complaint adding the remaining Petitioners and a proposed class of any United States citizen and his or her noncitizen spouse who (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130 petition filed by the United States citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (iv)"; and (4) is within the jurisdiction of the state of Maryland. ECF No. 6. The pending Motion

for Preliminary Injunction was filed on August 5, 2019. ECF No. 7.[3] Respondents filed an opposition and a Motion to Dismiss on September 3, 2019, ECF No. 15. Petitioners filed a reply brief in support of the Motion for Preliminary Injunction and a response to the Motion to Dismiss on October 1, 2019. ECF No. 23.[4] Respondents have not filed a reply brief in support of their Motion to Dismiss.[5]

## II. MOTION TO DISMISS

### A. Standard of Review

Respondents contend that the Amended Complaint must be dismissed because the Court lacks jurisdiction to hear Petitioners' challenge. When a party challenges subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).[6]

---

[3] Petitioners' Motion to Certify Class was filed on August 13, 2019 and remains pending. ECF No. 9. Petitioners indicate in their reply brief that the parties have agreed to stay the briefing schedule for that Motion until the Court rules on the pending Motion for Preliminary Injunction and Motion to Dismiss. ECF No. 23 at 28.

[4] Petitioners also filed a Motion for Temporary Restraining Order and Preliminary Injunction on June 13, 2019. ECF No. 2. On August 22, 2019, Petitioners filed a Notice of Withdrawal and explained that the Motion for Preliminary Injunction filed on August 5, 2019 was intended to supplant and supersede the Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 12 ¶ 3. Petitioners therefore withdrew the first Motion without prejudice. *Id.* ¶ 4.

[5] Respondents filed two Consent Motions for Extension of Time to File Reply. ECF No. 24, 26. The Court granted both Motions and gave Respondent until November 27, 2019 to file a reply brief in support of their Motion to Dismiss. ECF Nos. 25, 27. To date, the Court has received no indication from Respondents that they intend to file a reply brief or a third motion for extension of time. Thus, the Court will assume Respondents have waived their right to file a reply brief.

[6] Respondents also argue that the Amended Complaint must be dismissed because Petitioners' claims are unlikely to be successful. Because Respondents combine the Motion to Dismiss with their response to Petitioners' Motion for Preliminary Injunction, it is difficult to determine whether Respondents' merits argument pertains to the first prong of the preliminary injunction analysis or the ultimate merits of Petitioners' case. Because Respondents do not cite to Federal Rule of Civil Procedure 12(b)(6) and it is not proper for the Court to actually determine the merits of the case at the Motion to Dismiss stage, the Court will interpret Respondents' Motion to Dismiss as based solely on Rule 12(b)(1) and it will consider Respondents' arguments regarding the merits during its discussion of the Motion for Preliminary Injunction.

## B. Discussion

A federal court must have subject-matter jurisdiction to decide a matter before it. *Lightfoot v. Cendant Mortg. Corp.*, 137 S.Ct. 553, 562 (2017). If it does not, then the court must dismiss the case. Fed. R. Civ. P. 12(b)(1). The Court will therefore first consider Respondents' argument that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) each deprive the Court of subject-matter jurisdiction to review the challenged practice.

Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered under any provision of this chapter." Section 1252(b)(9) provides further that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." Respondents contend that these provisions bar judicial review of any action related to removal.

As the Court previously explained in *Lin v. Nielsen*, 377 F. Supp. 3d 556 (D. Md. 2019), a case with the same claims based on the same challenged practice, Petitioners do not seek judicial review of a final order of removal, and their claims do not arise from an action taken to remove an alien from the United States. 377 F. Supp. 3d at 562. Rather, the "APA and INA claims arise from an allegation that DHS has adopted a new policy that nullifies its own rules. Petitioners' Due Process Clause claims arise from an allegation that Petitioners have a legitimate entitlement to complete the application process, and DHS has arbitrarily denied them the opportunity to complete that process." *Id.* Thus, §§ 1252(a)(5) and 1252(b)(9) do not strip the Court of jurisdiction to consider Petitioners' claims.

Section 1252(g) similarly does not bar judicial review here. That section provides that, except for where otherwise provided therein, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Petitioners, however, "do not challenge whether or how the Attorney General may decide to remove [the noncitizen Petitioners]; they concede that [their] removal is inevitable. They ask only for the opportunity to complete the provisional waiver process provided for in DHS's own regulations." *Lin*, 377 F. Supp. 3d at 563. Therefore, the Court once again concludes that it has jurisdiction to determine the merits of this case, so Respondents' Motion to Dismiss is denied.

## III. PRELIMINARY INJUNCTION

The Court will next consider whether Petitioners and the proposed class are entitled to preliminary injunctive relief. Petitioners ask the Court to enjoin Respondents from arresting, detaining, or removing all noncitizen Petitioners and proposed class members and to order Respondents to release from custody, including release from orders of supervision and immigration detention, all noncitizen Petitioners and proposed class members.[7]

---

[7] In a footnote in their opposition and Motion to Dismiss, Respondents assert that "[a]s a procedural matter, the Court should not grant preliminary injunctive relief to absent members of the uncertified class." ECF No. 15 at 2 n.1. This argument lacks merit. Indeed, this Court has previously stated that "courts may enter class-wide injunctive relief before certification of a class." *J.O.P. v. United States Dep't of Homeland Sec.*, Case No. GJH–119–1944, 2019 WL 3536786, at *4 (D. Md. Aug. 2, 2019); *see also Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 433 (6th Cir. 2012) ("Simply put, there is nothing improper about a preliminary injunction preceding a ruling on class certification."); *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015); *Newberg on Class Actions* § 4:30 (5th ed. 2013) ("[A] court may issue a preliminary injunction in class suits prior to a ruling on the merits."). In contrast, Respondent's proffered authority, *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334 (4th Cir. 2006), does not pertain to injunctive relief, but rather held that a default judgment was unenforceable by a class that had never been certified. The Court will therefore consider whether preliminary injunctive relief is proper for both Petitioners and proposed class members.

11

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (internal quotation marks omitted). To succeed on a motion for a preliminary injunction, plaintiffs must establish (1) a likelihood of success on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. All four factors weigh in favor of granting a preliminary injunction here.

Just as this Court held in *Lin*, Petitioners have shown that they are likely to succeed on the merits of their APA claim. *See Lin*, 377 F. Supp. 3d at 564. The APA bars agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). An agency action is arbitrary and capricious when the agency disregards rules or regulations still in effect or departs from a prior policy without "articulat[ing] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *See Sierra Club v. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018). "[A]n agency changing its course must supply a reasoned analysis," and the court may not infer the agency's reasoning from mere silence. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 57 (1983). In short, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Respondents effectively used the I-130 interview to lure Petitioners Sanchez Hernandez and Nana and other noncitizen members of the proposed class to their arrests, preventing them from completing the provisional waiver process. This practice of arresting applicants at the I-130

12

interview also deterred Petitioners Rodriguez Peña, Aldana Martinez, Murithi, and Ndula and other noncitizen members of the proposed class from attending the I-130 interview, thereby also preventing those individuals from completing the provisional waiver process. Respondents "have thus taken a rule that was promulgated for one purpose and used it for the opposite purpose," *see Lin*, 377 F. Supp. 3d at 564, and "[i]f left unchecked, this 'new policy' would render the provisional waiver a nullity," *see Martinez v. Nielsen*, 341 F. Supp. 3d 400, 410 (D.N.J. 2018). This is precisely the type of arbitrary and capricious behavior the APA is designed to prevent. *See Lin*, 377 F. Supp. 3d at 564; *Martinez*, 341 F. Supp. 3d at 410; *Calderon v. Sessions*, 330 F. Supp. 3d 944, 958 (S.D.N.Y. 2018).

Respondents nonetheless argue that Petitioners' APA claim lacks merit because they are challenging decisions to execute final orders of removal and to grant or deny provisional waivers, decisions which are committed to agency discretion and therefore unreviewable. As the Court already explained, however, this is an incorrect characterization of Petitioners' claim. Petitioners do not challenge Respondents' decision to remove them; rather, they assert that the government exceeded its legal authority by disregarding its own regulations. *See Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981) ("[E]ven where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations."). Nor do they challenge Respondents' decisions to grant or deny any provisional waivers; again, they only seek access to a process that federal regulations have made available to them and with which the agency has not acted in accordance. Therefore, the Court concludes that Petitioners are

likely to succeed on their claim that ICE's practice of detaining noncitizens at the I-130 interview violates the APA.[8]

The Court also finds that Petitioners would suffer irreparable harm in the absence of a preliminary injunction. The detention of Petitioners Sanchez Hernandez and Nana caused them and their families the emotional harm of being separated and the economic harm of losing the families' primary income-earners. ECF No. 6 ¶¶ 47–48, 59–61; *see Int'l Refugee Assistance Project v. Trump*, 883 F.3d 233, 320 (4th Cir. 2018), *vacated on other grounds*, 138 S.Ct. 2710 (2018) (stating that "[p]rolonged and indefinite separation of parents, children, siblings, and partners create not only temporary feelings of anxiety but also lasting strains on the most basic human relationships" and therefore constitutes irreparable harm); *Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) (stating that "separation from family members, medical needs, and potential economic hardship" are important factors when assessing irreparable harm); *Ragbir v. United States*, Case No. 2:17–cv–1256–KM, 2018 WL 1446407, at *18 (D.N.J. Mar. 23, 2018) (stating that a party's "separat[ion] from his wife, daughter, family, and community" if deported contributed to a finding of irreparable harm). Detention or removal would have an equally harmful effect on Petitioners who have, up until this point, chosen to forgo the I-130 interview, as well as the proposed class members. Moreover, in the absence of preliminary injunctive relief, Respondents would likely continue to detain and remove noncitizen I-130 applicants, who would later have a difficult time returning to the United States even if Petitioners and the proposed class receive a favorable ruling. A preliminary injunction will therefore maintain the status quo and ensure that eligible I-130 applicants can actually benefit from any final ruling in their favor. *See English v. Ryland Mortg. Co.*, Case No. GJH–16–3675, 2016 WL 6820365, at *2 (D. Md. Nov.

---

[8] Because the Court resolves the APA claim in Petitioners' favor, it need not determine at this stage whether INA regulations create an entitlement under the Due Process Clause.

16, 2016) (stating that the purpose of a preliminary injunction is "to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits" (internal quotation marks omitted)).

As to the third prong, the balance of equities also tips in favor of Petitioners. As this Court noted in *Lin*, Petitioners "have followed DHS's own promulgated rules," 377 F. Supp. 3d at 565, only to be impeded by Respondents' efforts to undercut those rules. The balance weighs in favor of Petitioners, who will continue to suffer the harms described above, rather than Respondents, who are unlikely to be harmed by an injunction against a likely unlawful practice. *See Newsom ex rel. Newsom v. Albemarle Cty. School Bd.*, 354 F.3d 249, 261 (4th Cir. 2003).

Finally, this order is in the public interest because it requires Respondents to comport with their own rules and regulations, bars arbitrary agency action toward vulnerable immigrant communities, and diminishes the emotional and financial impact on families participating in the provisional waiver process. *See Lin*, F. Supp. 3d at 565.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss is denied and Petitioners' Motion for Preliminary Injunction is granted. Respondents are enjoined and prohibited from arresting, detaining, or removing all noncitizen Petitioners and noncitizen members of the proposed class pending further proceedings in this Court. Respondents are further ordered to release from custody, including release from orders of supervision and immigration detention, all noncitizen Petitioners and noncitizen members of the proposed class.

A separate Order shall issue.

Date: <u>February 7, 2020</u>　　　　　　　　　　　　<u>　/s/　　　　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge