**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **ALYSE SANCHEZ,** *et al.*, | * | |
| **Plaintiffs-Petitioners,** | * | |
| **v.** | | **Case No.: GJH-19-1728** |
| | * | |
| **KEVIN MCALEENAN,** *et al.*, | * | |
| **Defendants-Respondents.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Undocumented spouses of American citizens who entered the United States without inspection or who have been ordered removed from the United States are eligible to apply for lawful status that will permit them to reside permanently in the United States, but only after leaving the United States to complete a procedure called consular processing. This process often results in long periods of family separation, and many spouses have thus chosen not to apply for lawful status. In 2016, in recognition of this problem, United States Customs and Immigration Services ("USCIS"), a component of the United States Department of Homeland Security ("DHS"), promulgated a rule that allowed spouses with final orders of removal to apply for a provisional waiver of inadmissibility prior to leaving the United States, thus reducing the length of the consular processing procedure.

Plaintiffs-Petitioners ("Plaintiffs") are married couples—each comprising one American citizen and one noncitizen with a final order of removal—who applied for this provisional waiver only for Immigration and Customs Enforcement ("ICE") to detain the noncitizen spouse at the required waiver interview or who chose not to apply for the waiver out of fear that the noncitizen

1

spouse would be detained at the waiver interview. ECF No. 6. Defendants-Respondents

("Defendants") are the Acting Secretary of Homeland Security, the Acting Director of ICE, and

the Director of ICE's Maryland Field Office. *Id.*

On behalf of themselves and a proposed class of all others similarly situated, Plaintiffs

challenge ICE's practice of detaining noncitizens who come to USCIS for their waiver interview

on the grounds that the practice violates the Immigration and Nationality Act ("INA"), the Due

Process Clause, and the Administrative Procedure Act ("APA"). *Id.* Currently pending before the

Court is Plaintiffs' Motion for Class Certification. ECF No. 9.[1] No hearing is necessary to

resolve the pending motion. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons,

Plaintiffs' Motion for Class Certification is granted.

## I.   BACKGROUND

### A.  Legal Background

An alien "who has been ordered removed" is inadmissible for reentry to the United States

for five, ten, or twenty years from the date of departure or removal, depending on whether the

alien is removed upon arrival, is removed after arrival, has already been removed once before, or

has been convicted of an aggravated felony.[2] 8 U.S.C. § 1182(a)(9)(A)(i)–(ii); 8 C.F.R. 212.2(a).

An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United

States as a lawful permanent resident. 8 U.S.C. § 1182(a). This inadmissibility may be waived by

the Secretary of Homeland Security's consent to reapply for admission, 8 U.S.C. §

1182(a)(9)(A)(iii), but the waiver application process can take well over a year, 78 Fed. Reg.

---

[1] Also pending is Defendants' Consent Motion to Extend Time, requesting two additional days to file a response to Plaintiffs' Motion. ECF No. 42. This Motion is granted.

[2] The Court recognizes that "many consider 'using the term 'alien' to refer to other human beings' to be 'offensive and demeaning.' [The Court uses] the term 'only where necessary to be consistent with the statutory language' that Congress has chosen and 'to avoid any confusion in replacing a legal term of art with a more appropriate term.'" *See Trump v. Hawaii*, 138 S.Ct. 2392, 2443 n.7 (2018) (Sotomayor, J., dissenting) (quoting *Flores v. United States Citizenship & Immigration Servs.*, 718 F.3d 548, 551–52 n.1 (6th Cir. 2013)).

536-01, 536 (Jan. 3, 2013). Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for this waiver of admissibility was first required to depart from the United States. *Id.*

In 2013, recognizing that undocumented immediate family members of citizens who were living in the United States were choosing to forego applying for visas rather than be separated from their families for at least a year, and potentially longer, DHS promulgated a rule "to allow certain immediate relatives of U.S. Citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." *Id.* The rule was expressly promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," *id.*, and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]," *id.* at 567. In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens with final removal orders. 81 Fed. Reg. 50244 (July 29, 2016).

The process requires first filling out a Form I-130, which establishes a qualifying relationship to a United States citizen. 78 Fed. Reg. 536-01 at 547–48. After the Form I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, pursuant to 8 C.F.R. § 212.2(j), can be conditionally approved while the individual remains in the United States. *Id.* Once the I-212 is conditionally approved, the individual must complete Form I-601A, an application for a provisional unlawful presence waiver. *Id.*; *see also* 8 C.F.R. § 212.7(e)(4)(iv). Once the waiver is approved, the individual departs from the United States to obtain the immigrant visa through the consular processing procedure, thereby executing the prior removal order. *See* 8 U.S.C. § 1101(g).

### B.  Plaintiffs and the Proposed Class

As the Court outlined in its Memorandum Opinion granting Plaintiff's request for a preliminary injunction, *see* ECF No. 28, Plaintiffs are married couples—each comprising one American citizen and one noncitizen with a final order of removal—who applied for this provisional waiver only for Immigration and Customs Enforcement ("ICE") to detain the noncitizen spouse at the required waiver interview or who chose not to apply for the waiver out of fear that the noncitizen spouse would be detained at the waiver interview. *See Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 607032, at *2–*4 (D. Md. Feb. 7, 2020). On August 13, 2019, Plaintiffs filed a Motion for Class Certification. ECF No. 9. Plaintiffs seek to certify a class defined as any American citizen and his or her noncitizen spouse who: (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the American citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. §§ 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of the Baltimore ICE-ERO field office (i.e., the state of Maryland). *Id.* at 10.[3] Defendants filed a response on June 18, 2020, ECF No. 43, and Plaintiffs filed a reply on August 3, 2020, ECF No. 47.

## II.    DISCUSSION

"Class certification is a strictly procedural matter, and the merits of the case claims at stake are not to be considered when deciding whether to certify a class." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 214 (D. Md. 1997) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). "District courts have wide discretion in deciding whether or not to certify a class and their decisions may be reversed only for abuse of discretion." *Gunnells v. Healthplan*

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citing *Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1992)) (internal punctuation omitted).

Class certification is governed by Federal Rule of Civil Procedure 23, which provides a two-step framework for certifying a class. First, the proposed class must satisfy the four prerequisites identified in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation"). Fed. R. Civ. P. 23(a). If those requirements are satisfied, the action must further qualify for one of the three categories of classes identified in Rule 23(b): (1) prosecuting separate actions would create a risk of inconsistent or varying adjudications or impair the ability of nonparties to protect their interests; (2) final injunctive or declaratory relief is appropriate; or (3) common questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b).

**A.  Rule 23(a)**

Plaintiffs meet their burden under 23(a) because they have demonstrated that the proposed class meets the numerosity, commonality, typicality, and adequate representation perquisites for class certification. The Court will address each requirement separately.

### i.     Numerosity

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case." *Hewlett*, 185 F.R.D. at 215. But "[g]enerally, fewer than 20 [members] will not satisfy numerosity although more than 40 will." *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 360–61 (D. Md. 2004). Moreover, "[w]here the only relief sought for the class is injunctive and declaratory in nature …, even speculative and conclusory representations as to size of the class suffice as to the requirement of many." *Doe v. Charleston Area Medical Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975); *see also Doe v. Heckler*, 576 F. Supp. 463, 467 (D. Md. 1983).

Here, Plaintiffs easily satisfy this requirement. First, there are already large numbers of members in the proposed class. Four local immigration attorneys have affirmed that the fact pattern identified in this case is common, and five attorneys attest to already representing over fifty members of the proposed class. *See* ECF No. 9-2 ¶ 3; ECF No. 9-7 ¶¶ 5–6; ECF No. 9-8 ¶¶ 5–8; ECF No. 9-9 ¶¶ 4–5; ECF No. 9-10 ¶¶ 5–8. Plaintiffs also assert that as of December 31, 2018, there were 7,860 pending I-130 applications by U.S. citizens on behalf of immediate family members in Maryland, *see* ECF No. 9-1 at 13, so even if a small percentage of these applications were filed by or on behalf of proposed class members, the proposed class would certainly be "so large that 'joinder of all members is impracticable.'" *See Lienhart*, 255 F.3d at 146. Moreover, new class members will come into the class as new I-130 applications are filed, and even more individuals may continue to be deterred from submitting I-130 applications by Defendants' alleged practices in this case, thus exacerbating the impracticability of joinder. *See*

*Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981) (finding that the numerosity requirement was met for a class that included future applicants and applicants that have been deterred from applying because the "joinder of unknown individuals is certainly impracticable" (internal quotation marks omitted)); *Reid v. Donelan*, 297 F.R.D. 185, 189 (D. Mass 2014) ("Unforeseen members will join the class at indeterminate points in the future, making joinder *impossible*." (emphasis in original)). The Court will also note that the only relief sought in this case is injunctive and declaratory in nature, so "even speculative and conclusory representations as to the size of the class suffice as to the requirement of many." *See Doe*, 529 F.2d at 645.

In addition to the large numbers in the proposed class, the composition of the class makes joinder impracticable. Proposed class members are spread across Maryland, may be unrepresented, and may not know one another, making it difficult to identify and locate individual class members. This, in combination with the inefficiencies in proposed class members pursuing claims in an individual capacity and the lack of resources many class members may have to bring such claims on their own, makes joinder impracticable. *See Hewlett*, 185 F.R.D. at 216 (finding that the difficulty in identifying potential plaintiffs, the likely geographic dispersion of the plaintiffs, and the small size of individual claims indicate that joinder is impracticable); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 368 (S.D.N.Y. 2019) (finding joinder impracticable, in part, because "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits" (internal quotation marks omitted)). Thus, Plaintiffs have met the Rule 23(a)'s numerosity requirement.

ii.     **Commonality**

"To establish commonality, the party seeking certification must 'demonstrate that the class members have suffered the same injury' and that their claims 'depend upon a common contention.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (quoting *Dukes*, 564 U.S. at 350). "The inquiry is not whether common questions of law or fact predominate, but only whether such questions exist." *Hewlett*, 185 F.R.D. at 216. "Minor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Id.* "Thus, the commonality requirement is not a high bar …" *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011).

Here, Plaintiffs seek adjudication of two legal issues: (1) whether Defendants' arrest, detention, and removal or attempted removal of noncitizen class members without consideration of their efforts to pursue legal status through the I-130 and provisional waiver process are contrary to law; and (2) whether Defendants' policy or practice of arresting or detaining noncitizen class members at their I-130 interviews is contrary to law. *See* ECF No. 6; *see also* ECF No. 9-1 at 15; ECF No. 47 at 11. The 2016 DHS regulations provide access to the provisional waiver process to all noncitizens with final removal orders, and Defendants' alleged practices have effectively nullified this process, so these questions of law are common to all members of the proposed class.

In contesting the commonality requirement, Defendants assert that there are differences between proposed class members, such as a noncitizen spouse having a criminal history or having been ordered removed in absentia, that will prevent the Court from giving a single answer to these questions. ECF No. 43 at 12. Specifically, Defendants state that an approved I-130

8

petition only indicates that USCIS has confirmed the qualifying relationship between the citizen petitioner and his or her noncitizen spouse. *See id.* They state further that the spouse cannot gain lawful permanent residency unless he or she can then establish that he or she is not inadmissible or, if inadmissible, that the ground of inadmissibility can be waived, and that many beneficiaries of an approved I-130, including members of the proposed class, will not be able to gain lawful permanent residency because they are subject to unwaivable grounds of inadmissibility. *See id.* The Court does not agree that these issues preclude certification.

"[T]he commonality requirement is not a high bar, and individual factual differences will not preclude certification under this constraint." *Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 525, 533 (D. Md. 2011). Indeed, "[c]ommonality does not require class members to share all issues in the suit, but simply a single common issue," and "[t]hus, factual differences among members' cases will not preclude certification if the class members share the same legal theory." *Bullock*, 210 F.R.D. at 560.

Here, the purported differences among proposed class members are not determinative of the legal issues that Plaintiffs present in this case. As Plaintiffs point out, all members of the proposed class are subject to and fear the same arrest, detention, and removal practices that Defendants have used to effectively nullify the provisional waiver process, and they seek the same relief. Class members do not seek for the Court to determine the merits of their claims for lawful permanent residency status, to which the purported differences could be relevant, or even for the Court to approve their provisional waivers. Rather, they simply ask for the opportunity provided by federal law to seek legal status by first participating in the provisional waiver process, and they ask the Court to determine whether Defendants can effectively prevent them from participating in that process via their arrest, detention, and removal practices. Any

differences among class members identified by Defendants are irrelevant to this inquiry, but instead pertain to later stages of the lawful permanent residency process that are not at issue in this case, such as determination of inadmissibility, whether that inadmissibility is waivable, and whether an individual is entitled to an immigrant visa. Because the proposed class members "share the same legal theory" that Defendants' arrest, detention, and removal procedures are unlawful, the class meets the commonality requirement. *See Bullock*, 210 F.R.D. at 560.

### iii.    Typicality

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Hewlett*, 185 F.R.D. at 217. A "claim may differ factually and still be 'typical' of the claims of class members if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Bullock v. Bd. of Educ. Montgomery Cty.*, 210 F.R.D. 556, 560 (D. Md. 2002).

Here, the proposed class members' claims arise from the same course of conduct: Defendants' arrest, detention, and removal practices with respect to the waiver interview. Each citizen spouse in the proposed class has begun, or wishes to begin, the process of legalizing their noncitizen spouse's immigration status by filing an I-130, and every noncitizen spouse in the proposed class is threatened with being unable to complete that process due to Defendants' allegedly unlawful practices with respect to the provisional waiver interview.

In oppositions, Defendants again contend that there are material differences among Plaintiffs and the proposed class that preclude the Court from finding that the typicality requirement has been met. But as the Court has already explained, any differences among Plaintiffs and proposed class members only affect whether noncitizen spouses will ultimately be

approved for a provisional waiver or for lawful permanent residency status, and not whether they can participate in the provisional waiver application process. Because a "claim may differ factually and still be 'typical' of the claims of class members if 'it arises from the same … course of conduct that gives rise to the claims of other class members,'" as is the case here, Plaintiffs meet the typicality requirement. *See Bullock*, 210 F.R.D. at 560.

### iv.   Adequate Representation

"Courts have broken down the [adequacy of representation] requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation." *Hewlett*, 185 F.R.D. at 218. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625–26.

With respect to class counsel, "[i]n absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class." *Id.* Here, Defendants do not seem to challenge the competency of Plaintiffs' counsel. *See* ECF No. 43 at 12–13 (challenging only the adequacy of the class representatives). Indeed, the proposed class is represented by attorneys from the American Civil Liberties Union of Maryland and Venable LLP who have considerable experience in immigration law and constitutional law, complex federal civil rights litigation, and class action litigation, including class actions involving the rights of noncitizens. Thus, class counsel are clearly "qualified, experienced, and generally able to conduct the proposed litigation," and therefore meet the

requirements of Rule 23(b)'s adequate representation requirement. *See Hewlett*, 185 F.R.D. at 218.

The class representatives also meet the adequate representation requirement because they will fairly and adequately represent the interests of the class. Plaintiffs and proposed class members have no conflicts because they share an identical interest in preventing Defendants from continuing their allegedly unlawful practice of detaining or removing noncitizen spouses without considering their efforts to pursue the provisional waiver process. In opposition, Defendants once again argue that Plaintiffs' interests are not aligned with the interests of the proposed class members due to differences between Plaintiffs and among Plaintiffs and class members. ECF No. 43 at 13. But, once again, Plaintiffs and the proposed class members are similarly situated in terms of their claims and the relief sought: each individual is either a citizen spouse or a noncitizen spouse who seeks to participate in the provisional waiver process but has allegedly been prevented from doing so due to Defendants' conduct. Although differences among Plaintiffs and class members may affect any individual plaintiff or class member's ability to succeed in obtaining a provisional waiver or eventual lawful permanent residence status, that ability is distinct from an individual's ability to access to the provisional waiver process. The latter is at the core of this case. Plaintiffs are in a position to "fairly and adequately protect the interests of the class" because they each seek access to the same process, so Rule 23's adequate representation requirement is met.

**B. Rule 23(b)**

"When the requirements of Rule 23(a) have been satisfied, the court must determine which particular type of class action is best suited to the particular case." *Hewlett*, 185 F.R.D. at 218. Plaintiffs contend the class may be properly certified under 23(b)(2), which provides that a

class action maybe maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole…." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 23, Advisory Committee Note to 1966 Amendment of Subdivision (b)(2) ("Action or inaction is directed to a class within the meaning of [Rule 23(b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.").

Here, the proposed class satisfies the requirements of Rule 23(b)(2) because Defendants "ha[ve] acted … on grounds generally applicable to the class" by creating the provisional waiver process and then nullifying that process by allegedly arresting, detaining, and removing noncitizen Plaintiffs and class members without considering their pursuit of lawful permanent residency status through that process.[4] *See* Fed. R. Civ. P. 23(b)(2). Furthermore, Defendants' conduct can be enjoined or declared unlawful as to all of the class members. *See Dukes*, 564 U.S. at 360. Indeed, as the Court has stated, Plaintiffs do not ask for individualized determinations of Plaintiffs' or class members' entitlement to a provisional waiver or lawful permanent residency, but instead seek a single, class-wide remedy that ends Defendants' allegedly unlawful practice of

---

[4] Although it is true that not all class members have been detained or removed, every class member still seeks to participate in the provisional waiver process and are thus affected by Defendants' conduct because it forces class members to live in fear of detention or removal should they move forward with the process. *See* Fed. R. Civ. P. 23, Advisory Committee Note to 1966 Amendment of Subdivision (b)(2).

systemically interfering with the provisional waiver process by arresting, detaining, or removing noncitizen spouses at their provisional waiver interviews.

In opposition, Defendants contend that class-wide relief is not available because "different subsets of putative class members may be entitled to relief where others would not." ECF No. 43 at 14. But 23(b)(2)'s focus is on "the party opposing the class" and whether that party "has acted or refused to act on grounds generally applicable to the class." *See* Fed. R. Civ. P. 23(b)(2). And as the Court has stated, the parties opposing the class—Defendants—have acted on grounds generally applicable to the class as a whole by nullifying the process by which noncitizen spouses of American citizens may apply for a provisional waiver in order to eventually seek lawful permanent residency. Thus, Defendants' argument misses the mark.

Defendants also contend that class-wide relief would be inappropriate because "the proposed class includes aliens who are ineligible for a provisional waiver" under 8 C.F.R. § 212.7(e)(4)(ii)–(v). ECF No. 43 at 15. But again, this argument does not focus on whether *Defendants* have acted on grounds generally applicable to the class, and it is therefore irrelevant to an inquiry under Rule 23(b)(2). But even if it were relevant, Defendants' assertion is incorrect because the proposed class either does exclude individuals addressed in 8 C.F.R. § 212.7(e)(4)(ii)–(v) or those individuals will no longer be ineligible for provisional waivers as they progress through the process.

First, §§ 212.7(e)(4)(iii) and (v) provide that "an alien is ineligible for a provisional unlawful presence waiver" if that person is in removal proceedings in which no final order of removal has been entered or if that person has a reinstated prior order of removal, meaning the individual reentered the United States after departing on an order removal and had that prior order reinstated. The proposed class, however, is limited to individuals who have "a final order

of removal and ha[ve] not yet departed the U.S. under that order." *See* ECF No. 9 at 10. Thus, the proposed class does exclude individuals who are ineligible for provisional waivers under §§ 212.7(e)(4)(iii) and (v).

Next, § 212.7(e)(4)(ii) makes ineligible individuals that do not have a case pending with the Department of State based on an approved immigrant visa petition for which the immigrant visa processing fee has been paid. But this section describes the class members' obligations to pay the immigrant visa as part of the provisional waiver process, *see* 8 C.F.R. § 212.7(e)(5)(F)(1), a stage to which Plaintiffs and class members have not been able to advance due to Defendants' allegedly unlawful conduct. Similarly, § 212.7(e)(4)(iv) requires that an individual have an approved I-212, which requests a waiver of inadmissibility, before filing an I-601A application for a provisional presence waiver, another step to which class members have not been able to advance due to Defendants' conduct deterring Plaintiffs and class members from even participating in the first step of the process–filing an I-130 application. Thus, individuals ineligible for provisional waivers under these two sections are correctly excluded from the class definition because they will no longer be ineligible as soon as they progress through the provisional waiver process.

Because Defendants have acted on grounds that are generally applicable to the class, class certification is proper under Rule 23(b)(2). Accordingly, the Court certifies the proposed class.

## III.      CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification is granted. A separate

Order shall issue.


Date: <u>September 30, 2020</u>                                    <u>  /s/                                            </u>
                                                                      GEORGE J. HAZEL
                                                                      United States District Judge