# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ALYSE SANCHEZ**, *et al.*, | * |
| *Plaintiffs-Petitioners*, | * |
| **v.** | * |
| **KEVIN MCALEENAN**, *et al.*, | * |
| *Defendants-Respondents*. | * |

Civil No. 19-1728-GJH

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS-MOTION

All named Defendants/Respondents hereby file this Reply in Support of their Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion.

## INTRODUCTION

Although many of the critical issues in this case have been briefed several times over, material changes in Supreme Court jurisprudence over the last few months have fundamentally altered the landscape of this case. The Supreme Court recently held in *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2063 (2022), that 8 U.S.C. § 1252(f)(1) strips district courts of jurisdiction to "enjoin or restrain the operation of" 8 U.S.C. § 1231 on a class-wide basis. By seeking to prohibit the government from "arresting, detaining, or removing any noncitizen class member," Plaintiffs request precisely the sort of relief that the Supreme Court has held that Section 1252(f)(1) prohibits. *See* ECF No. 104-2 at 3. The holding in *Aleman Gonzalez* is consistent with the government's position here and contrary to Plaintiffs' position and this Court's previous rulings. With this new binding precedent, the Court should find that it has no jurisdiction to issue the class-wide injunctive relief sought by Plaintiffs.

1

In addition to this significant update in binding authority, Plaintiffs have failed to establish that the provisional waiver regulations in 8 C.F.R. § 212.7(e) ("the Regulations") limit the government's ability to take action pursuant to Section 1231. Indeed, Plaintiffs fail to identify *any* provision in the Regulations' text that limits Section 1231's authorization to remove individuals with final orders of removal. Plaintiffs instead argue that the Regulations are silent on their impact on Section 1231's directive to remove class members, and that this silence creates a due process right. Plaintiffs then attempt to shift the burden to the government to establish that the Regulations expressly authorize the removal of noncitizen class members. However, Plaintiffs' argument is contrary to decades of Supreme Court precedent requiring that a regulation "contain explicitly mandatory language" to create a due process interest. *Ky. Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). Because Plaintiffs cannot identify anything in the Regulations that prohibits the government from taking enforcement actions against class members, their APA and due process claims fail, and Defendants are entitled to summary judgment.

## ARGUMENT

### I.   THIS COURT LACKS JURISDICTION TO ISSUE THE PROPOSED CLASS-WIDE INJUNCTIVE RELIEF.

Section 1252(f)(1) deprives this Court of jurisdiction to grant Plaintiffs' request for classwide injunctive relief. As the Supreme Court recently recognized in *Aleman Gonzalez*, 8 U.S.C. § 1252(f)(1) strips district courts of jurisdiction to "enjoin or restrain the operation of" 8 U.S.C. § 1231 (among other provisions). 142 S. Ct. at 2065. Section 1231, in turn, provides for DHS to detain and remove noncitizens who have been "ordered removed." Reading these provisions together, Section 1252(f)(1) strips district courts of jurisdiction to order DHS not to detain or remove aliens who have been ordered removed. This is precisely the relief that Plaintiffs seek — they ask the Court to enjoin Defendants from "arresting, detaining, or removing" any

noncitizen class member (all of whom have been ordered removed, per the class definition). Dkt. 104-2 at ¶ 4.

Plaintiffs argue that even though the proposed injunction would prohibit DHS from arresting, detaining, or removing noncitizens who have been ordered removed, Section 1252(f)(1) does not apply because the injunction's purpose would be to facilitate access to the provisional waiver process, which is authorized by statutes that fall outside the scope of Section 1252(f)(1) (i.e., 8 U.S.C. §§ 1182(a)(9)(A)(iii), 1182(a)(9)(B)(v)). (Pls.' Br. at 7). But the injunction's purpose is beside the point. For purposes of determining whether Section 1252(f)(1) deprives the Court of jurisdiction to issue the proposed injunction, the relevant question is whether the injunction would enjoin the operation of Section 1231. *Aleman Gonzalez*, 142 S. Ct. at 2065. The answer to this question is undeniably "yes" — the proposed injunction would largely prevent Section 1231 from operating against any class member.

Plaintiffs also argue that Section 1252(f)(1) does not apply because the proposed injunction would merely have a "collateral effect" on Section 1231's operation. This argument is based on footnote 4 of *Aleman Gonzalez*, where the Supreme Court cited a court of appeals case holding that Section 1252(f)(1) does not prevent courts from issuing injunctions that merely have "some collateral effect on the operation of a covered provision." 142 S. Ct. at 2067 n.4 (citing *Gonzales v. DHS*, 508 F.3d 1227, 1233 (9th Cir. 2007)).  In that case, the Ninth Circuit held that § 1252(f)(1) did not preclude an injunction implicating the adjustment of status provision at 8 U.S.C. § 1255(i), which had the collateral consequence of triggering reinstatement proceedings if the application was unsuccessful. The Court stated that *Gonzales* stood "at most for the unresponsive proposition that a court may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)*

even if that injunction has some collateral effect on the operation of a covered provision." *Aleman Gonzalez*, 142 S. Ct. at 2067 n.4 (emphasis in original).

Even assuming that injunctions with merely collateral effects on the covered provisions are excluded from the scope of Section 1252(f)(1)—an issue the Court did not address—Plaintiffs' proposed injunction would still be barred. In *Gonzales*, the plaintiffs, who were all seeking to adjust status, sought to enjoin DHS from applying or enforcing a DHS policy memo that instructed officers to adjudicate inadmissibility waiver applications related to adjustment applications before instituting reinstatement proceedings only if the noncitizen met the requirements under § 1182(a)(9)(C)(ii). *Gonzales*, 508 F.3d at 1231. Because adjusting status would have protected the plaintiffs from removal, the limitation on the government's authority to adjudicate the inadmissibility waiver applications effectively increased the likelihood that certain plaintiffs would be removed. After determining that the policy memo was unlawful because the government erroneously interpreted § 1182(a)(9)(C)(ii), the *Gonzales* district court enjoined DHS from operating pursuant to the policy memo and giving effect to any prior denied inadmissibility waiver applications. *Id.* at 1232. The Ninth Circuit dismissed the government's argument that Section 1252(f)(1) barred the injunction because the injunction enjoined a policy adopted under a section exempted from Section 1252(f)(1). *Id.* at 1233. The Court held that Section 1252(f)(1) did not apply even though enjoining the policy had the collateral effect of making some plaintiffs ineligible for removal. *Id.*

The *Gonzales* injunction is starkly different from the one that Plaintiffs seek here. Here, Plaintiffs ask the Court to enjoin DHS from "arresting, detaining, or removing" noncitizen class members, Dkt. 104-2 at ¶ 4, while the *Gonzales* injunction said nothing about DHS's authority to take those actions. To the extent that the *Gonzales* injunction limited the circumstances under

which DHS had the authority to arrest, detain, or remove noncitizens, that limitation was a downstream consequence of the fact that the injunction negated a potential ground for the commencement of removal proceedings. Here, it is undisputed that even a grant of a provisional waiver does not negate Plaintiffs' removal orders. The *Gonzales* injunction at most indirectly limited DHS's authority to detain or remove noncitizens by making certain plaintiffs ineligible for removal, whereas the proposed injunction in this case would directly order DHS not to detain or remove noncitizens whose removal orders remain valid. This characteristic distinguishes the proposed injunction from the sort of "collateral effect" injunction that the Supreme Court referenced in *Aleman Gonzalez*.

Plaintiffs invoke one additional case in support of their Section 1252(f)(1) argument – *Catholic Soc. Servs. v. I.N.S.*, 232 F.3d 1139, 1150 (9th Cir. 2000) (en banc). That case does not support Plaintiffs' position either. In *Catholic Soc. Servs.*, the Ninth Circuit held that Section 1252(f)(1)'s limitation on injunctive relief did not apply to a district court order enjoining the former Immigration and Naturalization Service ("INS") from enforcing an advance parole policy that prevented noncitizens from adjusting status under a 1986 amnesty provision. 232 F.3d at 1149–50. Like the injunction in *Gonzales*, and unlike the proposed injunction in this case, the *Catholic Soc. Servs.* injunction said nothing about INS's authority to detain or remove noncitizens. Rather, to the extent that the *Catholic Soc. Servs.* injunction limited that authority, the limitation was a collateral consequence of the fact that the injunction increased the likelihood that certain noncitizens would be able to adjust status, thereby decreasing the likelihood that those noncitizens would be subject to removal. Given the fundamental difference between the *Catholic Soc. Servs.* injunction and the injunction that Plaintiffs seek here, *Catholic Soc. Servs.* does not support Plaintiffs' Section 1252(f)(1) argument.

Unlike the injunctions in *Gonzales* and *Catholic Soc. Servs.*, here the Plaintiffs ask the Court to prohibit DHS from taking actions that a covered provision (Section 1231) authorizes DHS to take. Because the proposed injunction would directly enjoin the operation of Section 1231 on a classwide basis by prohibiting DHS from "arresting, detaining, or removing any noncitizen class member who is the beneficiary of a pending or approved I-130 petition," Section 1252(f)(1) deprives the Court of jurisdiction to grant the proposed injunctive relief. *See* ECF No. 104-2 at 3.

## II.   SECTION 1252(F)(1) ALSO BARS THE PROPOSED DECLARATORY RELIEF.

Section 1252(f)(1) also bars the proposed declaratory relief. Although Section 1252(f)(1) does not categorically withdraw district courts' jurisdiction to enter declaratory judgments, it does bar district courts from issuing declarations that would effectively "enjoin or restrain" the operation of a covered provision. *Hamama v. Adducci*, 912 F.3d 869, 880 n.8 (6th Cir. 2018), *cert. denied*, 141 S. Ct. 188 (2020); *cf. California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). A declaratory judgment has such an effect when it would enable "every single member of [a] class" to "immediately seek an injunction grounded on the authority of the declaratory judgment." *Alli v. Decker*, 650 F.3d 1007, 1020 n.2 (3d Cir. 2011) (Fuentes, J., dissenting); *see Hamama*, 912 F.3d at 880 n.8.

Here, Plaintiffs ask the Court to declare that it is unlawful for DHS to "interfer[e] with the individual Plaintiffs' and class members' ability to avail themselves of the provisional waiver process by arrest, detention, or removal." Dkt. 104-2 ¶ 1. If the Court issued such a declaration, every class member could immediately seek an injunction, grounded on the authority of the declaration, prohibiting the government from arresting, detaining, or removing him or her. While each class member seeking an injunction would fit within section 1252(f)(1)'s exception for an injunction as an "individual against whom proceedings . . . have been initiated," the class member

would only need to demonstrate that they are a class member to be entitled to injunction. The class member would not be required — as contemplated by Section 1252(f)(1) — to individually prove that he or she is entitled to relief. Given this outcome, the proposed declaration would have the same practical effect as an injunction. Section 1252(f)(1) therefore bars the Court from issuing the proposed declaratory relief.

### III.   THE PROVISIONAL WAIVER REGULATIONS DO NOT CONFER ANY RIGHT TO REMAIN IN THE UNITED STATES.

Plaintiffs' Opposition and Motion, and indeed this entire case, rise and fall on Plaintiffs' erroneous assertion that the Regulations confer upon Plaintiffs the right to remain in the United States despite their final orders of removal. That alleged right is not present in the Regulations. The Regulations allow certain noncitizens who are currently present in the United States to apply for a provisional unlawful presence waiver, but do not confer any legal status upon such applicants. 8 C.F.R. § 212.7(e). Indeed, the Regulations are silent on their effect on the government's statutory duty to enforce removal orders. Plaintiffs attempt to transform this silence into a right to remain in the United States through a mix of policy arguments and non-binding or inapposite caselaw. In doing so, they refuse to engage with, let alone demonstrate that they can meet, the applicable legal standards as set forth in Defendants' Motion. Therefore, this Court should grant summary judgment in favor of Defendants.

#### A.   Defendants' decision to execute Plaintiffs' removal orders does not violate the INA or its implementing regulations.

Plaintiffs first ignore the standard for interpreting statutes and regulations. Interpreting a regulation always begins with the language of the regulation itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989). Plaintiffs point to no language in the Regulation or in the authorizing statutes that places any limit on the government's ability to take enforcement

actions against class members. *See generally* ECF No. 104. Instead, without citing any binding authority for the proposition, Plaintiffs argue that the general purpose of the Regulations overrides their plain text. *Id.* at 12. Plaintiffs also improperly attempt to shift the burden to Defendants to prove that there is language in the Regulations authorizing Defendants to take enforcement actions against class members. *Id.* at 13-14. In doing so, Plaintiffs ignore that Section 1231 indisputably authorizes Defendants to arrest, detain, and remove noncitizens with final orders of removal and that it is Plaintiffs' burden to prove that the Regulations abrogate this authority. Plaintiffs' failure to point to any language in the Regulation limiting this statutory authorization dooms their argument.[1]

If Congress intended to stay the removal of, or allow deferred action for, the noncitizen class members, it could have done so, like it did in other areas of the INA and as DHS did in the INA's implementing regulations. *Compare* 8 U.S.C. § 1182(a)(9)(A), (a)(9)(B) (providing waivers for unlawful presence) *with* 8 U.S.C. § 1154(a)(D)(i)(II) ("Any individual described in subclause (I) is eligible for deferred action and work authorization."); 8 U.S.C. § 1227(d) (allowing the agency to grant a stay of removal for those who can show a prima facie case for approval of a T or U visa); 8 C.F.R. § 1003.6 (allowing the BIA to stay deportation while an appeal is pending). Instead, the statutory scheme in place makes Congress' intent clear that final orders of removal *shall* be executed. Contrary to Plaintiffs' argument, there is no exception in the applicable statutes or Regulations. *See* 8 U.S.C. § 1231(a).

---

[1] Plaintiffs point to the Adjudicator's Field Manual, section 15.1(c)(2) as evidence supporting their interpretation of the provisional unlawful presence waiver regulation. However, the Adjudicator's Field Manual has been retired. Additionally, the Plaintiffs that attended I-130 interviews and who were arrested by ICE all allege they were arrested following or at the conclusion of the USCIS interview. Thus, they were not arrested "during the course of the interview."

**B.  Defendants' decision to execute Plaintiffs' removal orders does not violate the APA.**

Plaintiffs' opposition next argues that removing class members nullifies the Regulations in violation of the notice and comment procedures in the APA. ECF No. 104 at 17-18. Their argument relies on this Court's prior determination that under *FCC v. Fox TV Stations, Inc.,* 556 U.S. 502, 515 (2009), and *Sierra Club v. Dep't of the Interior,* 899 F.3d 260, 293 (4th Cir. 2018), Defendants' actions impermissibly departed from their prior policy *sub silentio* and disregarded the Regulations. ECF No. 28 at 12. However, Plaintiffs' argument again relies on the erroneous premise that the Regulations limit the government's authority to detain and remove class members. As explained above, the Regulations cannot be plausibly interpreted to limit the government's authority to detain and remove class members under Section 1231. Therefore, Defendants could not have departed from or disregarded the Regulations, and Defendants' actions did not violate the APA.

**C.  The Government's decision to execute Plaintiffs' removal orders does not violate the Due Process Clause**.

Plaintiffs' final attempt to establish a right to remain in the United States rests, again, on their erroneous interpretation of the Regulations. ECF No. 104 at 19. The legal standard for establishing a due process interest reveals their argument's weakness. Plaintiffs fail to point to any "explicitly mandatory language" in the Regulations that curtails Defendants' legal authority under Section 1231 to enforce their final orders of removal. *See Ky. Dept. of Corrections,* 490 U.S. at 463; *see also Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 749 (2005) (examining whether there was mandatory language in the state law that conferred a due process interest but holding "even if the statute could be said to have made enforcement of restraining orders 'mandatory' . . . that would not necessarily mean that respondent has an entitlement to enforcement

of the mandate"). Instead of grappling with the Regulations' lack of mandatory text concerning enforcement actions, Plaintiffs merely assume that they have a due process interest based on their erroneous interpretation of the Regulations.

Plaintiffs are also wrong to argue that *Maldonado-Guzman v. Sessions,* 715 F. App'x 277, 284-85 (4th Cir. 2017), is inapposite because the removal of the petitioner in that case did not affect his ability to apply for a U-visa. *See* ECF No. 104 at 20. The first step in any due process analysis is whether the individual has a protected interest in the benefit being sought. "A party who is unable to identify a property or liberty interest cannot successfully assert a due process claim." *Maldonado-Guzman,* 715 F. App'x at 284 (citing *Smith v. Ashcroft,* 295 F.3d 425, 429 (4th Cir. 2012)). In *Maldonado-Guzman,* the Court held that the "U-visa application does not create a liberty or property interest protected by the Due Process Clause" because "U visas are a discretionary form of relief." *Id*. at 284-85. Although the Court could have stopped its due process inquiry here, the Court went on to analyze whether the petitioner satisfied *another separate* threshold requirement for a due process violation — prejudice. *See United States v. Lopez-Collazo,* 824 F.3d 453, 460-62 (4th Cir. 2016) (requiring petitioner show that the due process violation caused prejudice). The Court held, with respect to this *separate* step in the due process analysis, that the petitioner was "not prejudiced by the denial of a continuance" because he could still apply for a U-visa. *Maldonado-Guzman,* 715 F. App'x at 285. Here, the relevant inquiry is whether Plaintiffs can establish a due process interest in the provisional waiver regulations. Like the petitioner in *Maldonado-Guzman,* they cannot. Because Plaintiffs fail at the first step of the due process analysis, the issue of whether Plaintiffs were prejudiced is irrelevant.

"On many occasions [the Fourth Circuit] has held that discretionary statutory 'rights' do not create a liberty or property interest in the Due Process Clause." *Smith v. Ashcroft,* 295 F.3d

425, 430 (4th Cir. 2002). Plaintiffs' due process claim based on the discretionary provisional waiver fares no better. This Court should grant summary judgment on Plaintiff's due process claim in favor of Defendants.

### D.  Class members who are ineligible to apply for a provisional waiver are not entitled to relief from this Court.

As explained above, Plaintiffs fail to establish that the Regulations offer *any* protection from removal. Plaintiffs' argument that the Regulations insulate class members from removal is even weaker with respect to class members who are ineligible to apply for a provisional waiver.

The Regulations require that an individual with a final order of removal have an approved Form I-212, Application for Permission to Reapply for Admission into the United States After Deportation or Removal, before applying for a provisional unlawful presence waiver. 8 C.F.R. § 212.7(e)(4)(iv). The Regulations also provide that individuals who are inadmissible on any ground other than unlawful presence are ineligible for the provisional unlawful presence waiver. 8 C.F.R. § 212.7(e)(3)(iii). Plaintiffs fail to cite to any binding case law where a Court recognized that an individual has a statutory, regulatory, or due process right to apply for relief for which he is ineligible. Instead, Plaintiffs discount decades of binding case law that says the opposite on the basis that those cases "were not the result of government interference and deliberate obstruction." ECF No. 104 at 20 n.4. But Plaintiffs' point is a non-sequitur — even government interference would not give an individual a right to apply for a benefit for which he was ineligible. Moreover, Plaintiffs fail to establish that any of the binding case law that Defendants cited turned on a finding that the government had no role in establishing the plaintiffs' eligibility. *See Bd. Of Regents v. Rother,* 408 U.S. 564 (1972); *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 60 (1999); *Siena Corp v. Mayor & City Council of Rockville Maryland,* 873 F.3d 456, 461 (4th Cir. 2017). Neither do Plaintiffs establish that a plaintiff has a right to both the ultimate relief he seeks and to anything

11

that *might* make him eligible for such relief. By Plaintiffs' logic, any time DHS removed *any* noncitizen, that noncitizen could claim he was deprived of his right to a provisional waiver. It is Plaintiffs' burden to establish that they are eligible for the relief that they claim to have a right to seek. Because many class members are ineligible for provisional waivers, Plaintiffs are not entitled to classwide relief,[2] and Defendants are entitled to summary judgment.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion for summary judgment and enter judgment for Defendants.

Respectfully submitted,

Erek L. Barron
United States Attorney

  */s/ Matt Haven*
Matthew Haven
Assistant United States Attorneys
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

---

[2] In a Rule 23(b)(2) class action such as this one, the plaintiff class must show that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*." Fed. R. Civ. P. 23(b)(2) (emphasis added). Even if proposed injunctive or declaratory relief is inappropriate with respect to only a small percentage of class members, relief cannot be awarded. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1090–91 (C.D. Cal. 2020) (denying classwide relief because it was inappropriate as to a small percentage of class members).

BRIAN M BOYNTON
Principle Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation – District Court Section


SARAH L. VUONG
Senior Litigation Counsel

By: *Julian M. Kurz*
Julian M. Kurz
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-4962
Fax: (202) 305-7000
Julian.m.kurz@usdoj.gov

By: */s/ Mary L. Larakers*
MARY L. LARAKERS
Attorney-in-charge
Texas Bar No. 24093943
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 353-4419
Fax: (202) 305-7000
Mary.l.larakers@usdoj.gov

*Counsel for Defendants*