IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALYSE SANCHEZ, et al.,          *

     Plaintiffs-Petitioners,      *

v.                            *       Civil Action No. GLR-19-1728
                                       Member Case: GLR-18-3548

KEVIN MCALEENAN.,[1] et al.,    *

     Defendants-Respondents.    *

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants-Respondents' Motion for Summary

Judgment, (ECF No. 72), and Plaintiffs-Petitioners' Cross-Motion for Summary Judgment,

(ECF No. 104). The Motions are ripe for disposition, and no hearing is necessary. See

Local Rule 105.6 (D.Md. 2023).[2] For the reasons outlined below, the Court will grant in

---

[1] Defendant-Respondent McAleenan is no longer the Acting Secretary of Homeland Security. Under Federal Rule of Civil Procedure 25(d), his successor is automatically substituted as a party.

[2] Also pending is Immigration Reform Law Institute's Motion for Leave to File Brief of Amicus Curiae (Sanchez, ECF No. 108). There is no Federal Rule of Civil Procedure that applies to motions for leave to appear as amicus curiae in a federal district court. Am. Humanist Ass'n v. Md.-Nat'l Cap. Park & Plan. Comm'n, 303 F.R.D. 266, 269 (D.Md. 2014). Accordingly, district courts have discretion to permit amicus briefs, and often look for guidance to Rule 29 of the Federal Rules of Appellate Procedure, which applies to amicus briefs at the federal appeals level. Id. Rule 29 indicates that amici should state "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed.R.App.P. 29(b)(2). "At the trial level, where the issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure." Bryant v. Better Bus. Bureau of Greater Md., 923 F.Supp. 720, 727 (D.Md. 1996) (quoting Yip v. Pagano, 606 F.Supp. 1566, 1568 (D.N.J. 1985), aff'd, 782 F.2d 1033 (3d Cir. 1986), cert. denied, 476 U.S. 1141 (1986)). Ultimately, a "motion for leave to file an amicus curiae

part and deny in part Defendants-Respondents' Motion and grant in part and deny in part Plaintiffs-Petitioners' Cross-Motion.

## I.   BACKGROUND

**A.**   <u>Legal Background</u>

An alien "who has been ordered removed" is inadmissible for reentry to the United States for five, ten, or twenty years from the date of departure or removal, depending on whether the alien is removed upon arrival, is removed after arrival, has already been removed once before, or has been convicted of an aggravated felony.[3] 8 U.S.C. § 1182(a)(9)(A)(i)–(ii); 8 C.F.R. 212.2(a). An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United States as a lawful permanent resident. 8 U.S.C. § 1182(a). This inadmissibility may be waived by the Secretary of Homeland Security's consent to reapply for admission, <u>id.</u> at (a)(9)(A)(iii), but the waiver application process can take well over a year. 78 Fed. Reg. 536-01, 536 (Jan. 3, 2013). Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for

---

brief . . . should not be granted unless the court 'deems the proffered information timely and useful.'" <u>Id.</u> (quoting <u>Yip</u>, 606 F.Supp. at 1568). Although Immigration Law Reform Institute purports to have a special interest in this litigation, their proposed amici are duplicative of the arguments raised in the parties' briefs and are not necessary for the Court's determination of the legal issues at hand. Accordingly, the Court will deny the Motion.

[3] The Court recognizes that "many consider 'using the term "alien" to refer to other human beings' to be 'offensive and demeaning.' [The Court uses] the term 'only where necessary 'to be consistent with the statutory language' that Congress has chosen and 'to avoid any confusion in replacing a legal term of art with a more appropriate term.'" <u>See</u> <u>Trump v. Hawaii</u>, 585 U.S. 667, 746 n.7 (2018) (Sotomayor, J., dissenting) (quoting <u>Flores v. U.S. Citizenship & Immigr. Servs.</u>, 718 F.3d 548, 551 n.1 (6th Cir. 2013)).

this waiver of admissibility was first required to depart from the United States. Id. at 541–42.

In 2013, recognizing that undocumented immediate family members of citizens who were living in the United States were choosing to forego applying for visas rather than be separated from their families for at least a year, and potentially longer, DHS promulgated a rule "to allow certain immediate relatives of U.S. Citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." Id. at 536 ("[M]any immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa."). The rule was expressly promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," id., and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]. . . ." id. at 568. In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens with final removal orders. 81 Fed. Reg. 50244 (July 29, 2016).

The process to apply for provisional unlawful presence waivers first requires the United States citizen spouse to file a Form I-130 to petition for immediate relative status on behalf of their alien spouse so that the alien spouse may immigrate to the United States. 8 C.F.R. § 212.7(e) (3) (vi); 8 U.S.C. § 1182(a)(9)(B)(v); see also Roland v. U.S. Citizenship & Immigr. Servs., 850 F.3d 625, 629 (4th Cir. 2017). As part of this step, the applicants are often required to attend an interview to determine whether the United States citizen and the alien spouse have a bona fide marriage. See 8 U.S.C. § 1153(f),

§ 1154(a)(1). Second, after the Form I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, under 8 C.F.R. § 212.2(j), can be conditionally approved while the individual remains in the United States. 78 Fed. Reg. 536-01 at 547–48. Third, once the I-212 is conditionally approved, the individual must complete Form I-601A, an application for a provisional unlawful presence waiver. Id.; see also 8 C.F.R. § 212.7(e)(4)(iv). Fourth, once the waiver is approved, the individual departs from the United States to obtain the immigrant visa, executing the prior removal order, and appears at an immigrant visa interview at a United Sates consulate. See 8 C.F.R. §212.7(e)(12),(e) (3) (V). Finally, the individual may return to the United States with the immigrant visa and upon admission become a Lawful Permanent Resident. See 8 C.F.R. § 212.7(e)(12)(i).

**B.    Factual Background**

As more fully outlined in this Court's May 2, 2019 Memorandum Opinion, (Lin et al. v. Nielsen et al., ["Lin"], GLR-18-3548, May 2, 2019 Mem. Op. at 3–4, ECF No. 26), and February 7, 2020 Memorandum Opinion, (Sanchez et al. v. McAleenan et al., ["Sanchez"], GLR-19-1728, Feb. 7, 2020 Mem. Op. at 4–8, ECF No. 28), named Plaintiffs-Petitioners Alyse Sanchez, Elmer Onan Sanchez, Jean Claude Eyeghe-Nana, Amira Abbas Abdalla, Theresa Rodriguez Pena, Misael Rodriguez Pena, Olivia Aldana Martinez, Jose Carlos Aldana Martinez, Tatyana Murithi, Mwiti Murithi, Bibiana Ndula, Eric Ndula, Wanrong Lin, and Hui Fang Dong (collectively, "Plaintiffs") are five married couples—each comprising one American citizen and one noncitizen with a final order of removal—who applied for provisional unlawful presence waivers only for Immigration and Customs

Enforcement ("ICE") to detain the noncitizen spouse at the required I-130 interview or who chose not to attend the waiver interview out of fear that the noncitizen spouse would be detained at the interview. (Lin, Compl. ¶¶ 28, 31–32, ECF No. 1; Sanchez, Am. Compl., ¶¶ 39–87, ECF No. 6). Additionally, on September 30, 2020, this Court granted Plaintiffs' Motion for Class Certification, certifying a class defined as any American citizen and his or her noncitizen spouse who:

> (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the American citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of the Baltimore ICE-ERO field office (i.e., the state of Maryland).

(Sanchez, Sept. 30, 2020 Order at 1, ECF No. 53).

Defendants-Respondents ("Defendants") are the Acting Secretary of Homeland Security, the Acting Director of ICE, and the Director of ICE's Maryland Field Office. (Lin, Compl. ¶¶ 11–13; Sanchez, Am. Compl. ¶¶ 22–24). On behalf of themselves and a class of all others similarly situated, Plaintiffs challenge ICE's practice of detaining noncitizens who come to the United States Customs and Immigration Services ("USCIS") for their waiver interview on the grounds that the practice violates the Immigration and Nationality Act ("INA") (Lin, Counts I, V; Sanchez, Count I), the Due Process Clause (Lin, Counts II, VI; Sanchez, Count II), the Administrative Procedure Act ("APA") (Lin, Count

III; <u>Sanchez</u>, Count III), and the Suspension Clause[4] (<u>Lin</u>, Count IV; <u>Sanchez</u>, Count IV). (<u>Lin</u>, Compl. ¶¶ 43–63; <u>Sanchez</u>, Am. Compl. ¶¶ 95–112).

## C.   **Procedural History**

Plaintiffs-Petitioners Lin and Dong filed a Complaint in this Court on November 19, 2018 (<u>Lin</u>, ECF No. 1). The Court granted a preliminary injunction on May 2, 2019 enjoining Defendants from removing Lin from the United States pending further proceedings. (<u>Lin</u>, May 2, 2019 Order at 1, ECF No. 27). Plaintiffs-Petitioners Sanchez and Sanchez Hernandez filed a Complaint in this Court on June 13, 2019. (<u>Sanchez</u>, ECF No. 1). On August 5, 2019, the <u>Sanchez</u> Plaintiffs filed an Amended Complaint adding the remaining named Plaintiffs-Petitioners and a proposed class of any United States citizen and his or her noncitizen spouse who "(1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130 petition filed by the United States citizen spouse; (3) is not 'ineligible' for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (iv)"; and (4) is within the jurisdiction of the state of Maryland. (<u>Sanchez</u>, ECF No. 6).

On February 7, 2020, this Court issued a Memorandum Opinion and Order granting the <u>Sanchez</u> Plaintiffs' Motion for Preliminary Injunction, (<u>Sanchez</u>, ECF No. 7), and denying Defendants' Motion to Dismiss, (<u>Sanchez</u>, ECF No. 15). (<u>Sanchez</u>, ECF Nos. 28, 29). That Order (1) preliminarily enjoined and prohibited Defendants from arresting, detaining, or removing all noncitizen Plaintiffs and noncitizen members of the class, and

---

[4] This Count appears to have been dropped.

(2) instructed Defendants to release from custody all noncitizen Plaintiffs and noncitizen members of the class, including release from orders of supervision and immigration detention. (<u>Sanchez</u>, Feb. 7, 2020 Order at 1, ECF No. 29). On June 19, 2020, the Court granted a consent motion to consolidate the <u>Lin</u> and <u>Sanchez</u> cases. (<u>Lin</u>, ECF No. 51). On September 30, 2020, this Court granted Plaintiffs' Motion for Class Certification, certifying a class defined as any American citizen and his or her noncitizen spouse who:

> (1) has a final order of removal and has not departed the United States under that order; (2) is the beneficiary of a pending or approved I-130, Petition for Alien Relative, filed by the American citizen spouse; (3) is not "ineligible" for a provisional waiver under 8 C.F.R. § 212.7(e)(4)(i) or (vi); and (4) is within the jurisdiction of the Baltimore ICE-ERO field office (i.e., the state of Maryland).

(<u>Sanchez</u>, Sept. 30, 2020 Order at 1; ECF No. 53).

On February 9, 2021, Defendants filed the instant Motion for Summary Judgment (<u>Sanchez</u>, ECF No. 72). Following a stay of the case, Plaintiffs filed the instant Cross-Motion for Summary Judgment and Opposition to Defendants' Motion on July 19, 2022. (<u>Sanchez</u>, ECF No. 104). Defendants filed a Reply in Support of their Motion for Summary Judgment and Opposition to Plaintiffs' Cross-Motion on October 11, 2022. (ECF No. 106). Plaintiffs filed a Reply in support of their Cross-Motion on November 30, 2022. (ECF No. 109).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's

favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Id.</u> If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (quoting <u>Anderson</u>, 477 U.S. at 247).

When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be reviewed in the light most favorable to the non-movant." <u>Mellen v. Bunting</u>, 327 F.3d 355, 363 (4th Cir. 2023) (citing <u>Rossignol v. Voohaar</u>, 316 F.3d 516, 523 (4th Cir. 2003)).

## B.   <u>Analysis</u>

The parties here agree that, except as to the scope of the injunction, there are no material facts in dispute. (<u>Sanchez</u>, Defs.' Mem. L. Supp. Mot. Summ. J. ["Defs.' Mot."] at 12–13, ECF No. 72-1; <u>Sanchez</u>, Pls.' Mem. L. Supp. Cross-Mot. Summ. J. ["Pls.' Mot."] at 5, ECF No. 104-1). The parties' dispute centers on questions of law: whether Defendant's actions in arresting, detaining, and removing class members at the conclusion of their Form I-130 interviews violates the Due Process Clause, the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and applicable provisional unlawful presence waiver regulations. For the reasons explained below, the

Court concludes that Defendants' conduct violates all three, and the Plaintiffs are entitled to summary judgment.

### 1.    Subject Matter Jurisdiction

As a threshold matter, a federal court must have subject-matter jurisdiction to decide a matter before it. <u>Lightfoot v. Cendant Mortg. Corp.</u>, 580 U.S. 82, 95 (2017). If it does not, then the court must dismiss the case. Fed.R.Civ.P. 12(b)(1). The Court will therefore first consider Defendants' argument that 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) each deprive the Court of subject-matter jurisdiction to review the challenged practice.[5]

Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered . . . under any provision of this chapter." <u>Id.</u> Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." <u>Id.</u>

---

[5] Defendants also argue that the Court does not have "jurisdiction" to issue class-wide injunctive relief under section 1252(f). While the Court addresses its ability to issue class-wide injunctive relief <u>infra</u>, the Court notes that 1252(f) does not affect subject matter jurisdiction in this case. In <u>Biden v. Texas</u>, the Supreme Court rejected the argument that section 1252(f)(1) concerns subject matter jurisdiction. <u>Biden v. Texas</u>, 597 U.S. 785, 801 (2022). The Court explained, "the question whether a court has jurisdiction to grant a particular remedy is different from the question whether it has subject matter jurisdiction over a particular class of claims." <u>Id.</u> While the provision may "withdraw[ ] a district court's 'jurisdiction or authority' to grant a particular form of relief[,] [i]t does not deprive the lower courts of all subject matter jurisdiction over claims brought under sections 1221 through 1232 of the INA." <u>Id.</u> at 798. Accordingly, section 1252(f) does not bar judicial review of this action.

Defendants contend that these provisions bar judicial review of any action related to removal. This Court previously held in both <u>Sanchez</u> and <u>Lin</u> that those sections do not strip this Court of jurisdiction. (<u>See</u> <u>Lin v. Nielsen et al.</u>, May 2, 2019 Mem. Op. at 4–8, ECF No. 26, 377 F.Supp.3d 556, 561–63 (D.Md. 2019); <u>Sanchez v. McAleenan et al.</u>, Feb. 7 2020 Mem. Op. at 10–11, ECF No. 28, No. GJH-19-1728, 2020 WL 607032, at *5 (D.Md. Feb. 7, 2020)). As this Court has stated, Plaintiffs "do not seek judicial review of a final order of removal, and their claims do not arise from an action taken to remove an alien from the United States." <u>Sanchez</u>, Feb. 7 2020 Mem. Op. at 10, 2020 WL 607032, at *5 (D.Md. Feb. 7, 2020) (citing <u>Lin</u>, May 2, 2019 Mem. Op. at 6, 377 F.Supp.3d at 562). Rather, Plaintiffs raise due process, APA, and INA claims alleging that Defendants adopted a policy that violates its own rules and denies Plaintiffs the opportunity to complete the wavier of admissibility application process itself. <u>Id.</u> Because Plaintiffs' claims arise out of the waiver application process and do not challenge orders of removal, sections 1252(a)(5) and (b)(9) do not bar judicial review. <u>See</u> <u>Martinez v. Nielsen</u>, 341 F.Supp.3d 400, 408 (D.N.J. 2018) (sections 1252(a)(5) and (b)(9) do not bar review of the right to engage in the provisional waiver process before removal); <u>Jimenez v. Nielsen</u>, 334 F.Supp.3d 370, 382 (D.Mass. 2018) (same); <u>Calderon v. Sessions</u>, 330 F.Supp.3d 944, 955 (S.D.N.Y. 2018) (same); <u>cf.</u> <u>You v. Nielsen</u>, 321 F.Supp.3d 451, 458–59 (S.D.N.Y. 2018) (holding that the "arising from" language of section 1252(b)(9) should not be read to "preclude habeas review over challenges to detention that are independent of challenges to removal orders.") (citing H.R. Conf. Rep. 109–72, 175 (2005)).

Defendants also contend that section 1252(g) bars judicial review of this action. Section 1252(g) states that, except for where otherwise provided therein, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court in Jennings made clear that only the decision or action to execute a removal order is unreviewable—not "any claim that can technically be said to 'arise from'" the execution of the removal order. 583 U.S. 281, 294 (2018). The Court warned that concluding otherwise would lead to "staggering results." Id. at 293. As this Court previously held, Plaintiffs "do not challenge whether or how the Attorney General may decide to remove the noncitizen [Plaintiffs]; they concede that [their] removal is inevitable. They ask only for the opportunity to complete the provisional waiver process provided for in DHS's own regulations." (Sanchez, Feb. 7, 2020 Mem. Op. at 11, 2020 WL 607032, at *5 (internal quotation omitted)). Accordingly, section 1252(g) also does not preclude this Court's review of this action.

Additionally, the Court's prior decisions regarding subject matter jurisdiction in this matter have become law of the case and "must be followed unless '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" Houston v. Kirkland, 2017 WL 128498, at *1 (D.Md. Jan. 12, 2017) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003)). Defendants offer no justification for departing from the law of the

case and no new controlling authority. As such, the Court must follow its prior rulings in this matter and finds, as numerous other courts to consider this issue have, that the Court has subject matter jurisdiction to review Defendants' conduct and determine the merits of this case. See U.S. v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004); Martinez v. Nielsen, 341 F.Supp.3d 400 (D.N.J. 2018); Calderon v. Sessions, 330 F.Supp.3d 944 (S.D.N.Y. 2018); You, Xiu Qing v. Nielsen, 321 F.Supp.3d 451 (S.D.N.Y. 2018).

### 2.      Violation of Fifth Amendment, APA, and INA

Plaintiffs argue that Defendants' arrest and removal of class members seeking to avail themselves of the provisional waiver process violates the Due Process Clause of the Fifth Amendment, the APA, and the INA and its applicable regulations. (Pls.' Mot. at 16–22). Defendants argue that the provisional waiver regulations do not confer a due process interest and that their actions do not violate the INA and its applicable regulations or, accordingly, the APA, because the INA does not insulate class members from removal during the provisional waiver process. (Defs.' Mot. at 17, 23–27).

The Fifth Amendment and the APA protect individuals from arbitrary governmental interference with their rights and liberties. The Court finds that by using the provisional waiver process to lure non-citizen spouses of U.S. citizens to Customs and Immigration Services facilities only to then arrest, detain, and eventually remove the applicants, Defendants have acted arbitrarily and nullified their own regulations in violation of Due Process, the APA, and the INA itself. Accordingly, the Court will deny Defendants' Motion for Summary Judgment and grant Plaintiffs' Cross-Motion for Summary Judgment.

### i.      Due Process Clause Violation

The Fifth Amendment's Due Process Clause requires that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process contains both procedural components, which require the government to follow certain procedures before a deprivation, and substantive components, which "bar[] certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." Zinermon v. Burch, 494 U.S. 113, 125 (1990) (internal quotation omitted); Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014). "The touchstone of due process is protection of the individual against arbitrary action of government," Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," even if the "alien" is "subject to a final order of deportation." Zadvydas v. Davis, 533 U.S. 678, 693–94 (2001); see also Wong Wing v. United States, 163 U.S. 228, 238 (1896).

Defendants argue that Plaintiffs do not have a protected liberty interest in applying for a provisional waiver and cannot maintain a due process claim. (Defs.' Mot. at 23–26). Plaintiffs argue that Defendants deprived them and the class of two separate liberty interests "(1) access to the provisional waiver process, and (2) not being lured to USCIS to pursue legal rights and benefits only to be detained and removed." (Pls.' Mot. at 18).

First the Court finds that even if Plaintiffs do not have a liberty interest in either access to the provisional waiver process or not being lured to USCIS to pursue legal rights

and benefits only to be detained and removed, Defendants' violation of their own regulations violates the Accardi doctrine and, in turn, due process. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954); see also Thomas W. Merrill, The Accardi Principle, 74 Geo. Wash. L. Rev. 569, 576 (2006) (The Accardi opinion implies "that any violation by an agency of its own regulations, at least one that results in prejudice to a particular individual, offends due process" even where the Court "engaged in no independent analysis of the nature of Accardi's interest."). The Accardi doctrine provides that when an agency fails to follow its own procedures and regulations, that agency's actions are generally invalid. Accardi, 347 U.S. at 267–68; see also Nader v. Blair, 549 F.3d 953, 962 (4th Cir. 2008); United States v. Morgan, 193 F.3d 252, 266–67 (4th Cir. 1999) (An agency, having adopted a policy or regulation, is bound to apply it. Where prejudice has resulted, its failure to do so can create a due process violation.). The Accardi doctrine applies with particular force "[w]here the rights of individuals are affected." Morton v. Ruiz, 415 U.S. 199, 235 (1974). The doctrine's purpose is "to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures." United States v. Heffner, 420 F.2d 809, 812 (4th Cir. 1969). The Due Process Cause is implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." United States v. Caceres, 440 U.S. 741, 752–53 (1979); see also Sameena Inc. v. U.S. Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 545 (6th Cir. 2004). In Accardi, the Supreme Court held that

the failure of the Board of Immigration Appeals to follow their own procedures was a violation of due process. <u>Accardi</u>, 347 U.S. at 268; <u>see also</u> <u>Heffner</u>, 420 F.2d at 811–12.

Here, Plaintiffs reasonably relied on Defendants' regulations—which were explicitly promulgated for the benefit of "encourag[ing] immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa"—and prejudice clearly resulted. Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 Fed. Reg. 536, 568 (Jan. 3, 2013) [hereinafter "2013 Final Rule"]; <u>see also</u> Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 Fed. Reg. 50244 (July 29, 2016) [hereinafter "2016 Final Rule"] (extending eligibility for provisional unlawful presence waivers to aliens with final orders of removal). Plaintiffs were instructed to follow Defendants' established procedures, including submitting personal information and attending a Form I-130 interview. <u>See</u> 8 U.S.C. §§ 1153(f), 1154(a)(1). While attending the interview, Plaintiffs were detained, arrested, and removed. The Plaintiffs who did not attend their interviews also suffered prejudice because the threat of detention and removal at the interviews prevented them from completing the process that was created for their benefit. Defendants acted in direct opposition to their own regulations and procedures, which resulted in harm to the exact beneficiaries the regulations were promulgated to protect. As such, Defendants violated both the <u>Accardi</u> doctrine and the Due Process Clause, even if no liberty interest is implicated.

The Court additionally finds that Plaintiffs do have a liberty interest and due process interest in access to the provisional waiver process. The procedural component of due process "imposes constraints on governmental decisions which deprive individuals of

'liberty' or 'property' interests within the meaning of the Due Process Clause." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by [other] laws or policies." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (internal citation omitted). Considering this exact regulation, the District of Massachusetts noted that, "A regulation is for the purpose of a case such as this a 'law.'" <u>Jimenez v. Nielsen</u>, 334 F.Supp.3d 370, 386 (D.Mass. 2018); <u>see</u> <u>Goncalves v. Reno</u>, 144 F.3d 110, 125 (4th Cir. 1998). "When a regulation grants an entitlement to apply for relief, '[t]he availability of relief (or, at least, the opportunity to seek it) is properly classified as a substantive right' and a 'legitimate expectation[ ]' even when the relief depends on the exercise of an agency's discretion." <u>Jimenez</u>, 334 F.Supp.3d at 386 (quoting <u>Arevalo v. Ashcroft</u>, 344 F.3d 1, 11, 14 (1st Cir. 2003))[6]. In other words, the creation of a regulatory process for seeking relief creates "a right to seek relief" that is "separate and distinct from a right to the relief itself." <u>Arevalo</u>, 344 F.3d at 15 (citing <u>Accardi</u>, 347 U.S. at 268).

The Court finds that Plaintiffs had a liberty interest in participating in the provisional waiver application process. In 2013, Defendants, through notice and comment rulemaking, promulgated a process for seeking a provisional waiver. 2013 Final Rule, 78 Fed. Reg. at

---

[6] The Supreme Court acknowledged but did not overrule the holding in <u>Arevalo</u>. <u>See</u> <u>Fernandez-Vargas v. Gonzales</u>, 548 U.S. 30, 36 n.5 (2006) (citing <u>Arevalo</u>, 344 F.3d at 1).

537. In 2016, Defendants, through notice and comment rulemaking, extended that process to non-citizen spouses with final orders of removal entered against them. 2016 Final Rule, 81 Fed. Reg. at 50244. When considering these regulations, the Southern District of New York found that they "create a 'right to seek' the provisional waiver even when there is no 'right to the [waiver] itself.'" Calderon, 330 F.Supp.3d at 957–58 (quoting Arevalo, 344 F.3d at 15). The court found that DHS' attempted removal of a petitioner in the process of pursuing a provisional waiver violated due process. See id. at 958–59.

Here, Defendants created a right to apply for a provisional waiver, which, at the end of the application process, may or may not be granted. Then, by detaining and removing class members at the first step of the provisional waiver process, Defendants foreclosed the opportunity to complete the process and violated class members' due process right to avail themselves of the provisional waiver process itself. Defendants contend that Plaintiffs do not have a due process interest in the provisional waiver because they have failed to meet the eligibility requirements to receive the benefit; specifically, they "have not obtained (or even applied for) a conditionally approved Form I-212 waiver." (Defs.' Mot. at 25). In promulgating the provisional waiver regulations, DHS created a clear process where applicants are ineligible to fill out the I-212 until after the I-130 is approved. 2013 Final Rule, 78 Fed. Reg. at 547–48. It was Defendants' own actions arresting Plaintiffs at their Form I-130 interview or scaring them away from completing the Form I-130 interview that prevented Plaintiffs from completing proceeding to the second step of the process, the Form I-212. Defendants cannot block applicants from completing the application for relief

and then claim that applicants are not entitled to relief because they failed to complete the application.

Defendants also contend that discretionary rights do not create a liberty interest for due process, (Defs.' Reply Supp. Mot. Summ. J. and Opp'n Pls.' Cross-Mot. ["Defs.' Opp'n"] at 10–11, ECF No. 106), which is true. However, the liberty interest here is participation in the application process itself, not the outcome of the application. While the decision whether to issue a waiver is discretionary, the ability to participate in the application process itself is not. By arresting and removing applicants who appeared at their I-130 interviews and discouraging applicants from appearing at the I-130 interviews in the first place, Defendants blocked Plaintiffs from even proceeding to step two of the application process. Contra Maldonado-Guzman v. Sessions, 715 F.App'x 277, 284 (4th Cir. 2017) ("Board did not violate the Due Process Clause when it dismissed Maldonado-Guzman's appeal because the denial of a continuance does not affect Maldonado-Guzman's interest in filing or pursuing the U visa application"). Removal of applicants from the United States indefinitely prevents them from completing the provisional waiver process, which requires that applicants be present in the United States. Contra id. (deciding that plaintiff did not establish due process violation where he was "not precluded" from filing another U visa application).

Similarly, Defendants' argument that Plaintiffs did not have a legitimate entitlement to relief because the regulations did not contain "explicitly mandatory language" misses the mark. (Defs.' Mot. at 23–24). "Explicitly mandatory language" is required to create an entitlement to a particular outcome. Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 463

(1989) ("We have also articulated a requirement . . . that that the regulations contain 'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest."). However, unlike in Thompson, 490 U.S. at 460, on which Defendants rely, the issue here is not whether Plaintiffs have an entitlement to a certain outcome (here, a provisional waiver); the issue is whether Plaintiffs have an entitlement to apply for the potential outcome in the first instance—in other words, whether Plaintiffs are entitled to complete the waiver's "substantive predicates." Id. at 463. This Court is in agreement with other courts to consider this issue. These courts have found that DHS created a right to apply for a provisional unlawful presence waiver, and that Defendants' attempts to strip or block that right violate due process. See Calderon, 330 F.Supp.3d at 958–59; Martinez v. Nielsen, 341 F.Supp.3d 400, 408 (D.N.J. 2018) ("Martinez has the right to complete the process created for individuals in his position," and "the government's attempt to frustrate that process violates his rights"); see also Jimenez v. Cronen, 317 F.Supp.3d 626, 658 (D.Mass. 2018) ("ICE failed to follow the procedures required by § 241.4 and to provide petitioners with the due process the Constitution requires").

Once a liberty interest has been identified, Courts apply the balancing test put forth in Mathews v. Eldridge, which consists of three factors:

> (1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements.

Turner v. Rodgers, 564 U.S. 431, 444–45 (2011) (alterations and internal quotation marks omitted) (quoting Mathews, 424 U.S. at 332).

As discussed above, the first element is satisfied because DHS created a liberty interest in applying for a provisional waiver. Plaintiffs' private interest in being permitted to apply for a provisional waiver is significant: the application process was created and expanded to prevent extended family separation for applicants in precisely Plaintiffs' situation. See 2013 Final Rule, 78 Fed. Reg. at 537.

Second, there is a clear risk that Plaintiffs will be deprived of their interest in applying for a provisional waiver. Plaintiffs who attended the Form I-130 interview only to be detained were prevented from completing their application and Plaintiffs threatened with the risk of detention were similarly deterred from completing the application. The regulation at issue provides for procedural safeguards: it states that "USCIS will adjudicate a provisional unlawful presence waiver application." 8 C.F.R. § 212.7(e)(8) (emphasis added). By preventing Plaintiffs from applying for relief, Defendants did not consider or adjudicate Plaintiffs' unlawful presence waivers before depriving them of the right to apply. The regulations also indicate DHS' expectation that the applicant will remain in the United States until the provisional waiver application is adjudicated. See Jimenez, 334 F.Supp.3d at 386, 388. For instance, the regulations state that an applicant is eligible if he or she "[w]ill depart from the United States to obtain the immigrant visa" and requires applicates to attend a biometrics appointment "at a location in the United States." 8 C.F.R. § 212.7(e)(3)(ii), (v). Additionally, DHS in its explanation of the 2016 regulation, promised

applicants that it would decide an application for provisional waiver before the applicant

was required to leave the United States stating:

> Those applying for provisional waivers will receive advance
> notice of USCIS' decision to provisionally waive their 3- or
> 10-year unlawful presence bar before they leave the United
> States for their immigrant visa interview abroad. This offers
> applicants and their family members the certainty of knowing
> that the applicants have been provisionally approved for
> waivers of the 3- and 10-year unlawful presence bars before
> departing from the United States.

2016 Final Rule, 81 Fed. Reg. at 50246. Defendants' conduct violates the stated procedure

of the provisional waiver process and prevents Plaintiffs from meeting the stated criteria

of the process, which in turn deprives them of their interest in applying for a provisional

waiver.

Third, while the government may have an interest in executing final orders of

removal where appropriate, that interest does not outweigh the Plaintiffs' interest in the

opportunity to apply for relief and the procedural requirements the regulations provide for.

The government has the same ability to execute removal upon completion and denial of

the provisional waiver application. The government's interest in executing an order of

removal at the interview rather than at a later step in the process, especially where the

government has already waited years or even decades to execute that same order of

removal, (see e.g., Pls.' Statement of Undisputed Facts ¶¶ 19, 53, ECF No. 104-4), does

not outweigh Plaintiffs' interest in executing their entitlement to apply for relief. On

balance, the Court finds that application of the <u>Mathews</u> factors weighs in favor of Plaintiffs, and Defendants' conduct violates procedural due process.[7]

For the reasons stated above, the Court finds that Defendants' conduct violates both the Due Process Clause and the <u>Accardi</u> Doctrine. Summary Judgment will be granted to Plaintiffs on Counts II and VI of the <u>Lin</u> Complaint and Count II of the <u>Sanchez</u> Amended Complaint.

### ii.   APA Violation

The APA authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency may not "depart from a prior policy <u>sub silentio</u> or simply disregard rules that are still on the books." <u>FCC v. Fox Television Stations, Inc.</u>, 556 U.S. 502, 515 (2009). "[A]n agency changing its course must supply a reasoned analysis," <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.</u>, 463 U.S. 29, 57 (1983), and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." <u>Sierra Club v. Dep't of the Interior</u>, 899 F.3d 260, 293 (4th Cir. 2018) (internal quotation marks and citation omitted).

---

[7] Because the Court has already found that Plaintiffs are entitled to summary judgment on their due process claims based on the <u>Accardi</u> doctrine and procedural due process, the Court need not decide whether Plaintiffs have a substantive due process interest in not being lured to USCIS to pursue legal rights and benefits only to be detained and removed. However, the Court notes without deciding that Plaintiffs may have a cognizable substantive due process claim.

DHS, through notice and comment rulemaking, promulgated regulations in 2013 and 2016 that created a process for individuals in Plaintiffs' and class members' position to apply for a waiver of the ten-year bar imposed by their unlawful presence and prior order of removal for the stated goal of "reducing separation time among family members." 2016 Final Rule, 81 Fed. Reg. at 50271. As part of that process, DHS required individuals to attend an interview to confirm the bona fides of their marriages. 8 U.S.C. §§ 1153(f), 1154(a)(1). Then, Defendants, without explanation, exploited this interview process to lure Plaintiffs to their arrest, preventing them from completing the exact provisional waiver process they created. Defendants' practice of arresting applicants at the I-130 interview deterred other class members from attending the I-130 interview, thereby also preventing those individuals from completing the provisional waiver process. As this Court previously stated, Defendants "t[ook] a rule that was promulgated for one purpose and used it for the opposite purpose." Sanchez, 2020 WL 607032, at *6. Defendants' abrupt change of course is exactly the kind of arbitrary and capricious behavior the APA is designed to prevent, and, if left unchecked, Defendants' "'new policy' would render the provisional waiver a nullity." Martinez, 341 F.Supp.3d at 410. Every court to reach this issue has found that Defendants' conduct of detaining individuals seeking to avail themselves of the waiver process violates the APA. See id.; see also Calderon, 330 F.Supp.3d at 958; M'Bagoyi v. Barr, 423 F.Supp.3d 99, 107 (M.D.Pa. 2019).

Defendants' use of the Form I-130 interview as a trap to lure provisional waiver applicants to their arrest while the immigrants are availing themselves of the process that Defendants themselves created is "arbitrary, capricious, an abuse of discretion, [and] not

in accordance with law" and violates Plaintiffs' and class members' rights under the APA. 5 U.S.C. § 706. Accordingly, Plaintiffs are entitled to Summary Judgment on Count III of the <u>Lin</u> Complaint and Count III of the <u>Sanchez</u> Complaint.

### iii.    INA and Implementing Regulations Violation

Plaintiffs argue that Defendants' conduct violates the INA and its implementing regulations. (Pls.' Mot. at 21–22). Defendants argue that their conduct does not violate the INA because the INA authorizes ICE to remove aliens with final removal orders pursuant to 8 U.S.C. § 1231(a) and that the waivers at issue, 8 U.S.C. § 1182(a)(9)(A)(iii) (consent for permission to reapply for admission) and § 1182(a)(9)(B)(v) (unlawful presence waiver) do not mention a stay of removal or place limits on ICE's authority to arrest, detain, or remove an individual with a final order of removal. (Defs.' Mot. at 17–18). At bottom, the Court agrees with Plaintiffs.

Regarding removal, the text of the INA states that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). An alien "may be detained beyond the removal period" if the alien "has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal" or in certain other circumstances which are subject to the exceptions in 8 U.S.C. § 1182(a)(9)(A)(iii) (consent for permission to reapply for admission) and § 1182(a)(9)(B)(v) (unlawful presence waiver) or otherwise not relevant. <u>Id.</u> § 1231(a)(6). Otherwise, "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under

regulations prescribed by the Attorney General." Id. § 1231(a)(3). By the plain language of the INA, an alien outside the 90-day removal period may only be either (1) detained beyond the removal period if they are determined to be "dangerous or a flight risk" or within certain enumerated categories or (2) subject to supervision. See You v. Nielsen, 321 F.Supp.3d 451, 462 n.7 (S.D.N.Y. 2018) (citing Zadvydas, 533 U.S. at 696). 8 U.S.C. § 1182(a)(9)(A)(iii) and § 1182(a)(9)(B)(v) exempt aliens applying for admission or establishing eligibility for an unlawful presence waiver from the categories of inadmissible aliens subject to discretionary removal under 8 U.S.C. § 1231(a)(6) and have been extended to aliens with final orders of removal entered against them. 2013 Final Rule, 78 Fed. Reg. at 536; 2016 Final Rule, 81 Fed. Reg. at 50244.

Here, named Plaintiffs, and presumably most class members, were not detained within 90 days of their removal period, and Defendants have not shown that Plaintiffs were dangerous, a flight risk, or subject to supervision. (Pls.' Mot. at 14). Defendants' actions prevented immigrants eligible for waivers under 8 U.S.C. § 1182(a)(9)(A)(iii) and § 1182(a)(9)(B)(v) from applying for the relevant waivers and completely eliminated the possibility of receiving the waivers for which the INA explicitly provides. As such, Defendants' conduct was not authorized by the INA. Defendants' argument that class members were ineligible for an unlawful presence waiver because they had not yet completed their Form I-212 application for consent to reapply for admission is unavailing. In promulgating the 2016 rule, DHS expressly decided that applicants are ineligible to fill out the I-212 until after the I-130 was approved, and ineligible to complete the I-601A until after the I-212 was approved. 2013 Final Rule, 78 Fed. Reg. at 547–48. By arresting

Plaintiffs at the conclusion of their interview related to the Form I-130, or by discouraging other applicants with the threat of arrest, Defendants prevented Plaintiffs from completing the second step of the process, the Form I-212. Defendants cannot be permitted to "erect an impenetrable barrier to completion of the provisional waiver process" and then claim that the applicants are ineligible because they have not completed the process. Lin, 377 F.Supp.3d at 564.

Additionally, Defendants' argument that 8 U.S.C. § 1231, which states that the Attorney General "shall remove" or "shall detain" immigrants within a 90-day removal period, mandates or authorizes removal of class members is futile. As discussed, Plaintiffs were not subject to the 90-day removal period, and it is well settled that the word "shall" does not make Defendants' otherwise fully discretionary law enforcement authority mandatory. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 761 (2005) (refusing to interpret "shall" to negate the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands").

To the extent there are any ambiguities in the INA, the statute must be read according to "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien,'" INS v. St. Cyr , 533 U.S. 289, 320 (2001) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987)). The text of the INA does not authorize Defendants' conduct of detaining aliens at their interviews while they pursue the first step of the 8 U.S.C. § 1182 waiver processes, and, as discussed above, the 2013 and 2016 regulations plainly prohibit Defendants' conduct.

Even if the plain language of the statute led to a different reading, in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," the plain language of the statute is not conclusive. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242–43 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). Rather, "[i]n such cases, the intention of the drafters, rather than the strict language, controls." Id. The provisional waiver regulations protect a "prevailing purpose" of the INA: to "implement[] the underlying intention of our immigration laws regarding the preservation of the family unit." Nwozuzu v. Holder, 726 F.3d 323, 332 (2d Cir. 2013) (quoting H.R. Rep. No. 82-1365 (1952)). Portions of the INA were enacted because "Congress felt that, in many circumstances, it was more important to unite families and preserve family ties than it was to enforce strictly the quota limitations or even the many restrictive sections that are designed to keep undesirable or harmful aliens out of the country." INS v. Errico, 385 U.S. 214, 220 (1966). The 2016 rule was designed to "reduce[] separation time among family members," bring about "humanitarian and emotional benefits derived from reduced separation of families," and prevent "significant emotional and financial hardship that Congress aimed to avoid when it authorized the waiver."  2016 Final Rule, 81 Fed. Reg. at 50271, 50245. By exploiting a process created and advertised to promote family unity and using it for the exact opposite purpose, Defendants' conduct goes against the purpose of the INA and its implementing regulations.

In support of their argument that the 2016 regulations do not limit their removal authority, Defendants point to the Federal Register's description of the 2013 regulations, which state that a provisional unlawful presence waiver application "will not . . . protect

an alien from being placed in removal proceedings or removed from the United States."
2013 Final Rule, 78 Fed. Reg. at 536; Provisional Unlawful Presence Waivers of
Inadmissibility for Certain Immediate Relatives, 77 Fed. Reg. 19902, 19902 (Apr. 2, 2012);
see (Defs.' Mot at 19). However, it was the 2016 regulation that explicitly expanded the
2013 provisional waiver process to individuals with final orders of removal. The Federal
Register's description of the 2016 regulations notably omitted the language stating that the
filing of a provisional waiver application will not protect and immigrant from removal. See
2016 Final Rule, 81 Fed. Reg. at 50244. Putting the 2013 and 2016 regulations in contrast,
the Court must presume that the language was intentionally omitted. See Territory of
Hawaii v. Mankichi, 190 U.S. 197, 220 (1903). This change between the 2013 and 2016
regulations then indicates that the 2016 regulations were in fact intended to protect
immigrants in the process of pursuing provisional waivers from detention and removal.

Additionally, any arguments that Defendants' "interpretation" of the regulations is
entitled to deference must fail. The regulations are unambiguous, and even if they were
ambiguous, Defendants' interpretation, which nullifies the entire waiver process, is plainly
unreasonable, and detaining and removing immigrants while they are present at the very
interview established by the mandated waiver process creates "unfair surprise" to the
regulated parties. See Kisor v. Wilkie, 139 S.Ct. 2400, 2415–18 (2019) ("A court should
decline to defer . . . to a new interpretation that creates 'unfair surprise' to regulated
parties."); Romero v. Barr, 937 F.3d 282, 291 (4th Cir. 2019).

The Court notes that every court to consider this issue has found that the 2016
regulations protect immigrants from detention and removal while they pursue provisional

waivers. See Calderon, 330 F.Supp.3d at 950 (enjoining detention or removal of immigrant while he was in process of pursuing a provisional waiver); M'Bagoyi, 423 F.Supp.3d at 103 (same); Pena v. Meade, No. 20-24560-CV, 2020 WL 7647022, at *1–2 (S.D.Fla. Dec. 3, 2020) (same).

Accordingly, the Court finds that Defendants' conduct violates the INA and its implementing regulations' text and purpose. Summary Judgment will be granted to Plaintiffs on Counts I and V of the Lin Complaint and Count I of the Sanchez Complaint.

**3.   Relief**

Defendants argue that section 1252(f)(1) deprives this Court of jurisdiction to grant Plaintiffs' request for class wide injunctive relief. (Defs.' Mot. at 27–28). Section 1252(f)(1) states:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). In Garland v. Aleman Gonzalez, a case decided after the preliminary injunctions entered in this case, the Court held that 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified [INA] statutory provisions." 596 U.S. 543, 550 (2022). The Court explained that this prohibition includes injunctions both requiring the Government to take actions that "in the Government's view" are not required under a referenced provision or, more importantly in

this case, requiring the government to refrain from taking actions that "in the Government's view" are allowed under a referenced provision. Aleman Gonzalez, 596 U.S. at 551 (emphasis added).

Notably, the Supreme Court has consistently held that while section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief," it "does not extend to individual cases." Aleman Gonzalez, 596 U.S. at 550 (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 481–82 (1999)). "Federal courts (except for the Supreme Court) now may only issue injunctions enjoining federal officials' unauthorized implementation of the removal statutes in the individual cases of noncitizens against whom removal proceedings have been initiated. Al Otro Lado, Inc. v. Mayorkas, 619 F.Supp.3d 1029, 1033 (S.D.Cal. 2022) (citing Aleman Gonzalez, 596 U.S. at 550), judgment entered, No. 17-CV-02366-BAS-KSC, 2022 WL 3970755 (S.D.Cal. Aug. 23, 2022).

Here, issuing the class-wide injunction Plaintiffs propose, which enjoins Defendants from "arresting, detaining, or removing any noncitizen Plaintiff or class member who is the beneficiary of a pending or approved I-130 petition," (Sanchez, Proposed Injunction ¶ 4, ECF No. 104-2), would in effect be ordering Defendants not to detain or remove class members. Removal and detention are authorized under section 1231(a), a provision indisputably covered by section 1252(f)(1). Aleman Gonzalez, 596 U.S. at 551 ("no one disputes that section 1231(a)(6) is among the provisions the 'operation' of which cannot be 'enjoined or restrained' under § 1252(f)(1)"); see § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond

the removal period . . . ."); § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period."). Even if Defendants' conduct violates section 1231, as the Court finds, because under Aleman Gonzalez section 1252(f)(1) bars injunctions enjoining even the unlawful operation of section 1231, 596 U.S. at 551, the Court is barred from issuing a class-wide injunction.

Plaintiffs argue, based on a footnote in Aleman Gonzalez, that section 1252(f)(1) does not apply here because the injunction would only have the collateral effect of preventing the operation of section 1231. (Pls.' Mot. at 10–12). This argument fails. Unlike in the cases to which Plaintiffs cite, the proposed injunction's effect on section 1252(f)(1) is not collateral. The language of the proposed injunction directly enjoins the defendants from detaining and removing class members, which fall under section 1231. Even if the injunction was phrased differently to require Defendants to allow class members access to the provisional waiver process, the direct effect would be to prevent the operation of section 1231. Because the proposed class-wide injunction would directly enjoin the operation, even the unlawful operation, of section 1231, it is barred by the Supreme Court's interpretation of section 1252(f)(1).

Individual injunctive relief is available to the named Plaintiffs against whom removal proceedings have been initiated.[8] Aleman Golzalez, 596 U.S. at 550 ("1252(f)(1)

---

[8] The Court will assume that all the individual named Plaintiffs had removal proceedings initiated against them.

does not preclude a court from entering injunctive relief on behalf of a particular alien (so long as 'proceedings' against the alien have been 'initiated'"). A plaintiff seeking a permanent injunction must demonstrate:

> (1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Legend Night Club v. Miller, 637 F.3d 291, 297 (4th Cir. 2011).

This Court has already found that Plaintiffs have suffered irreparable injury. In regard to the Lin Plaintiffs, the Court found that "Lin would be asked to fend for himself in a country he has not lived in since 2002," "indefinitely separated from his wife and his three adolescent children," and that Lin's wife "would suffer both the emotional harm of being separated from her husband and raising their children alone, as well as the economic harm from losing her partner in their family-owned restaurant." Lin, 377 F.Supp.3d at 564–65. In regard to the Sanchez Plaintiffs, the Court found that "the detention of Petitioners Sanchez[,] Hernandez, and Nana caused them and their families the emotional harm of being separated and the economic harm of losing the families' primary income-earners" and that "[d]etention or removal would have an equally harmful effect on Petitioners who have, up until this point, chosen to forgo the I-130 interview." Sanchez, 2020 WL 607032, at *7. Remedies available at law cannot compensate for the injuries of family separation, loss of access to the provisional waiver process, and loss of liberty which Plaintiffs have suffered.

The Court has also already found that the balance of hardships tips in Plaintiffs' favor. Sanchez, 2020 WL 607032, at *7 (quoting Lin, 377 F. Supp. 3d at 565) ("Petitioners have followed DHS's own promulgated rules only to be impeded by Respondents' efforts to undercut those rules. The balance weighs in favor of Petitioners, who will continue to suffer the harms described above, rather than Respondents, who are unlikely to be harmed by an injunction against a likely unlawful practice."). Having now found that Defendants' conduct was unlawful, the Court finds that the balance of hardships weighs even more strongly in favor of Plaintiffs. Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013). Finally, the Court has already found that an injunction is in the public interest "because it requires Respondents to comport with their own rules and regulations, bars arbitrary agency action toward vulnerable immigrant communities, and diminishes the emotional and financial impact on families participating in the provisional waiver process." Sanchez, 2020 WL 607032, at *7; see also Lin, 377 F.Supp.3d at 565. Accordingly, the Court will grant injunctive relief in favor of the individual named Plaintiffs.

Additionally, section 1252(f)(1) does not bar declaratory relief. As Justice Sotomayor explained in her partial concurrence in Aleman Gonzalez, the court's decision "rightly does not embrace the Government's eleventh-hour suggestion at oral argument to hold that section 1252(f)(1) bars even class-wide declaratory relief, a suggestion that would (if accepted) leave many noncitizens with no practical remedy whatsoever against clear violations by the Executive Branch." Aleman Gonzalez, 596 U.S. at 571–72 (Sotomayor, J., concurring in the judgment in part and dissenting in part). The Supreme Court has

elsewhere suggested that section 1252(f)(1) does not render class-wide declaratory relief unavailable. See Nielsen v. Preap, 139 S.Ct. 954, 962 (2019) (plurality opinion) ("[w]hether the . . . court had jurisdiction to enter . . . an injunction [under section 1252(f)(1)] is irrelevant because the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief"). Other district and circuit courts to consider the issue have held that section 1252(f)(1) does not bar district courts from entering class-wide declaratory relief. See Make the Rd. N.Y. v. Wolf, 962 F.3d 612, 635 (D.C. Cir. 2020) ("[Section 1252(f)] does not proscribe issuance of a declaratory judgment[.]"); Brito v. Garland, 22 F.4th 240, 252 (1st Cir. 2021) ("[W]e conclude that declaratory relief remains available under section 1252(f)(1)."); Alli v. Decker, 650 F.3d 1007, 1013 (3d Cir. 2011) ("[I]t is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief."); Rodriguez v. Hayes, 591 F.3d 1105, 1119 (9th Cir. 2010) ("Section 1252(f) was not meant to bar class-wide declaratory relief."); Al Otro Lado, 619 F.Supp.3d at 1048–49 ("Although the issuance of a class-wide injunction is prohibited, § 1252(f)(1) does not strip this Court of jurisdiction to issue a class-wide declaration."); Onosamba-Ohindo v. Searls, No. 20-CV-00290, 2023 WL 4107978, at *3 (W.D.N.Y. June 21, 2023).

Declaratory relief is warranted here. Defendants' practice of arresting, detaining, and removing noncitizen Plaintiffs and class members effectively nullifies Defendants own regulations and prevents Plaintiffs from availing themselves of the provisional waiver process in violation of the Due Process Clause of the Fifth Amendment, the APA, and the INA. Moreover, Defendants' argument that declaratory relief is impermissible here because it effectively enjoins the operation of a covered provision of section 1252(f)(1)

35

fails. (Defs.' Opp'n at 6). Defendants cite only to unpersuasive, non-binding authority, and the Court is in agreement with other Courts to consider the statute at issue, which found that declaratory relief was permitted. See, e.g., Al Otro Lado, 619 F.Supp.3d at 1048–49.

Based on the Supreme Court's holding in Aleman Gonzalez, the Court is barred from entering class-wide injunctive relief. Accordingly, Defendants arguments that the scope of the class-wide injunctive relief is too broad are moot.[9] (Defs.' Mot. at 28–32). Declaratory relief is still available and warranted, as is individual injunctive relief to the named Plaintiffs.

## III.    CONCLUSION

For the foregoing reasons, the Court, by separate Order which follows, will deny in part Defendants-Respondents' Motion for Summary Judgment (ECF No. 72) as to liability, and the Court will grant in part Plaintiffs-Petitioners' Cross-Motion for Summary Judgment (ECF No. 104) as to liability. The Court will deny in part and grant in part Defendants-Respondents' Motion for Summary Judgment (ECF No. 72) as to remedy, and the Court will deny in part and grant in part Plaintiffs-Petitioners' Cross-Motion for Summary Judgment (ECF No. 104) as to remedy.

Entered this 25th day of March, 2024.


                                _____/s/_____
                                George L. Russell, III
                                United States District Judge

---

[9] To the extent any concerns regarding breadth of the injunction remain as to the individual named Plaintiffs or as to declaratory relief, the Court finds that Plaintiffs' proposed modifications to the injunction address these concerns. (See Pls.' Mot. at 34–35).